NUMBER 13-05-366-CV


 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTi - EDINBURG 


 


BILLY RAY SCOGGINS, Appellant,


v.


YOLANDA TREVIÑO, Appellee.

 


On appeal from the 357th District Court of Cameron County, Texas.

 


O P I N I O N


Before Justices Hinojosa, Rodriguez, and Garza


Opinion by Justice Garza


 

Billy Ray Scoggins and Yolanda Trevino have a child named Julie, who was born out
of wedlock on June 22, 1995. On March 15, 2004, when Julie was almost nine years' old,
Yolanda filed a petition for name change, asking that Julie's surname be changed from
Trevino to Scoggins. Billy Ray filed an original answer in the cause, opposing the petition. 
The trial court found Yolanda's request to be in Julie's best interest and ordered her name
changed to Scoggins. Billy Ray now appeals by two issues. For the reasons that follow,
we overrule the issues raised and affirm the trial court's order. 

I. Facts

Because of the highly fact-specific nature of name-change issues involving minors,
see In re Guthrie, 45 S.W.3d 719, 726 (Tex. App.--Dallas 2001, pet. denied), we begin with
an overview of the relevant facts. 

Billy Ray and Yolanda have never been married and have never lived together,
though they admit that they have been engaged in a romantic relationship for the last 10 to
12 years. Julie has never lived with her father, though they have regular--albeit clandestine
and brief--contact with each other. Julie and her older half-brother, from Yolanda's former
marriage to another man, live with Yolanda and Yolanda's mother in a house that Billy Ray
and Yolanda purchased from Yolanda's parents in 1997. Until recently, Billy Ray's name
was on the deed to the house, as well as on the house's utilities, including the electric, gas,
and water accounts. Until recently, Billy Ray had also provided Yolanda with an automobile
for her personal use, in addition to furnishings for her home. Billy Ray continues to pay for
Julie's dance and gymnastics classes.

Although Billy Ray now acknowledges--at least to this Court and to the trial
court--that he has a parent-child relationship with Julie, he previously denied paternity
before the trial court in a suit to establish parent-child relationship. That suit ultimately
turned on the results of genetic tests which established that Billy Ray could not be ruled out
as Julie's father. By written order of the 357th Judicial District Court dated March 24, 1998,
Billy Ray was established as Julie's father, ordered to pay child support, and appointed to
be a possessory conservator. By the court's order, Julie's birth records were to be changed
to show that Billy Ray is her father. By the same order, the Court appointed Yolanda as
Julie's managing conservator with, among other things, the exclusive "power to represent
the child in legal action and to make other decisions of substantial legal significance
concerning the child . . . ." 

There is no indication in the record that Billy Ray has ever fallen behind on his child-support obligations. According to the record, these payments are Yolanda's sole source
of income. Billy Ray has regular contact with Julie, but he does not allow Julie to stay with
him during his designated periods of visitation. Instead, Billy Ray visits Julie for short
periods of time in locations away from his house, such as at Yolanda's home or at public
places, like restaurants or stores. 

Billy Ray's explanation for this behavior is that he has another family with a woman
named Linda "Recio" Scoggins, whom he describes as his wife. According to Billy Ray's
appellate brief, Linda is unaware of Julie and has no knowledge of his ongoing relationship
with Yolanda. Billy Ray strongly believes Linda would be upset if she were to ever learn the
truth about Yolanda and Julie. 

For reasons that have since become hotly-contested, Yolanda instituted the instant
proceeding on March 15, 2004 in the 357th Judicial District Court, which had continuing
jurisdiction pursuant to the order establishing parent-child relationship. On June 10, 2004,
Judge Darrel Hester, sitting as a visiting judge in the 357th, called the case and both sides
announced ready. Although Billy Ray's attorney objected to Judge Hester sitting as a
visiting judge, counsel failed to articulate any specific ground for his objection. Judge
Hester asked counsel what the necessity was in having Judge Alejandro hear the case, and
counsel responded, "Well, just because." The objection was overruled and that particular
point has not been reurged on appeal. 

The case proceeded before Judge Hester, and two witnesses were called to testify. 
The first was Yolanda. She testified that Julie has a relationship with Billy Ray and knows
him to be her father. Yolanda also testified that Julie has asked why she does not have Billy
Ray's last name and has expressed a desire to have the same name as her father. 
Yolanda testified that, in her opinion, it is in Julie's best interest to have her father's last
name. Yolanda was not cross-examined by Billy Ray's attorney.

 Billy Ray was the next witness to testify. Although Billy Ray admitted that he has a
parent-child relationship with Julie, he testified that, in his opinion, it would not be in Julie's
best interest to have his last name. The following exchanges are relevant to the issues on
appeal:

Question: [W]hy . . . would [it] not be in this child's best interests to
change her name?


Answer: Because I am married and I have other kids the same age as
this child, and the embarrassment - - I'm going to have to tell
these kids that their father has a child outside of wedlock.


Question: How is it in Julie Ann's best interests that her name remain
Trevino and not Scoggins?


Answer: It's not only in her best interest to remain Trevino, because
she's been Trevino all of her life, but I also have other kids that
are named Scoggins, and they are going to have to deal with
this. Harlingen-San Benito is a very small community, and you
are asking the court to force me to tell my kids and the whole
community that I have a child out of wedlock. 


 On cross-examination by his attorney, Billy Ray gave the following testimony that also
involved his opinion as to Julie's best interest:

Question: Mr. Scoggins, would you tell us the ages of your other children?


Answer: I have two older, grown kids that are in business with me. Then
I have a 14-year-old son and nine-year-old daughter, a two-year-old son and two-year-old granddaughter.


Question: Are your other children in any activities in the community with
Julie?


Answer: My daughter - - my nine-year-old daughter and my two-year-old
granddaughter are both in gymnastics with Julie. 


Question: Do they have any idea at all about Julie being your daughter?


Answer: No, they do not. 


 On re-direct examination, Billy Ray further clarified his reasons for opposing Julie's
name change:

Question: What you're telling this court is it's in your other children's best
interest that Julie Ann continue to be a secret?


Answer: That's what I'm telling this court. 


Billy Ray's attorney made the following closing remarks:


The court has wide discretion, obviously, in granting or denying this. But in
this particular case, we would ask the court, number one, to preserve the
good relationship that Mr. Scoggins has with his child right now, to think about
the other children involved in this, and to think about the preservation of a
family that's ongoing and running a construction company.


 At the close of the hearing, Judge Hester stated that he thought a "social
investigation" would be appropriate, but he did not enter a written order to that effect. On
July 10, 2004, Judge Alejandro entered a written order on Judge Hester's recommendation,
and a social study was subsequently conducted by Mary Jane Ashely-Coder. The social
study was filed on September 2, 2004 and indicates that Ms. Ashely-Coder met separately
with Yolanda, Julie, and Billy Ray. The overall conclusion of the study is that the name
change is not in Julie's best interest for two reasons: (1) Julie expressed no desire for a
name change until Yolanda informed her that a name change was possible; and (2) the
"minimal time and attention" that Julie currently receives from Billy Ray might be further
decreased and extra financial support may cease if Billy Ray's wife Linda discovers his
parent-child relationship with Julie.

 After the report was filed, a second hearing was held on March 3, 2005 with Judge
Alejandro presiding. Counsel for Billy Ray objected to Judge Alejandro presiding over the
case because Judge Hester had already heard the evidence. Judge Alejandro overruled
counsel's objection, and the case was re-called. 

 No new testimony was offered by the parties at the March 3, 2005 hearing, but Billy
Ray's attorney provided Judge Alejandro with a transcript of the June 10, 2004 hearing,
including the testimony of Yolanda and Billy Ray. Judge Alejandro indicated that the
testimony would be considered in lieu of live testimony. Counsel for Yolanda requested that
Judge Alejandro meet with Julie to determine her wishes on the name change, since the
court had not previously heard from Julie directly. Judge Alejandro agreed, and without any
objections, he took Julie into chambers to talk to her. No record was made of the meeting. 
When the court reconvened, Judge Alejandro stated that he had met with Julie and that the
name change should be granted. No written order was entered by Judge Alejandro. 

 A final order granting change of name by the 357th Judicial District Court was signed
by Judge Hester on March 10, 2005. The order refers to the hearing that occurred on
March 3, 2005 before Judge Alejandro and to the "record of testimony" that was "duly
reported by the court reporter for the 357th Judicial District Court." Given that no testimony
was heard or reported at the March 3, 2005 hearing before Judge Alejandro, we conclude
that the final order refers to the testimony duly recorded at the June 10, 2004 hearing before
Judge Hester, a record of which was produced by Billy Ray's attorney at the March 3, 2005
hearing. Notably, Judge Hester's final order granting the name change does not reference
the social study report which was filed on September 2, 2004, well before the name change
was granted. 

II. Appeal by Billy Ray Scoggins

 Billy Ray raises two issues on appeal: (1) "the trial court abused its discretion by
entering the order granting a change of name of the child because there was no evidence,
or alternatively, insufficient evidence, to justify a name change"; and (2) "the trial court erred
in conducting a piecemeal trial before two different judges."

A. Appellate Review of Name Change for a Minor 

 A court may order the name of a child changed if the court determines that a name
change is in the best interest of the child. See Tex. Fam. Code Ann. § 45.004(a)(1) (Vernon
2003). The trial court's granting of a name change is reviewed for abuse of discretion. In
re M.C.F., 121 S.W.3d 891, 896 (Tex. App.--Fort Worth 2004, no pet.). A trial court abuses
its discretion when it acts in an arbitrary and unreasonable manner, or when it acts without
reference to any guiding principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226
(Tex. 1991); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 
The trial court is given wide latitude in determining the best interests of a minor child. 
Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982). 

 Billy Ray argues that there is no evidence or legally insufficient evidence to support
the trial court's ruling. However, under an abuse of discretion standard, legal insufficiency
is not an independent ground of error; it is only a relevant factor in assessing whether the
trial court abused its discretion. Doyle v. Doyle, 955 S.W.2d 478, 479 (Tex. App.--Austin
1997, no pet.); Wilemon v. Wilemon, 930 S.W.2d 290, 293 (Tex. App.--Waco 1996, no
writ); Wood v. O'Donnell, 894 S.W.2d 555, 556 (Tex. App.--Fort Worth 1995, no writ). 

 In reviewing the legal sufficiency of the evidence, we view all the evidence in the light
favorable to the verdict, crediting favorable evidence if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not. City of Keller v. Wilson,
168 S.W.3d 802, 807 (Tex. 2005). We will sustain a legal sufficiency point if the record
reveals the following: (a) the complete absence of a vital fact; (b) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to prove a vital
fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the
evidence establishes conclusively the opposite of the vital fact. Id. at 810. The fact finder
is the sole judge of the credibility of the witnesses and the weight to give their testimony.
See id. at 819.

 Billy Ray contends that there is no evidence or legally insufficient evidence that the
name change is in Julie's best interest because Yolanda "offered no factual testimony as
to why it was so important to change . . . the [child's] last name" and because the
uncontradicted evidence shows that the "name change would cause marital discord and
unnecessary troubles to . . . [Billy Ray's] other children and grandchildren which in turn
would damage his relationship with Julie Ann Trevino." 

 The Fifth Court of Appeals in Dallas has offered the following list of factors that have
been used by courts to determine the best interest of a child with respect to a name change: 

(1) Whether the changed name or the present name would best avoid
embarrassment, inconvenience, or confusion for the custodial parent
or the child; 


(2) Whether it would be more convenient or easier for the child to have the
same name as or a different name from the custodial parent, either the
changed name or the present name; 


(3) Whether the changed name or the present name would help identify
the child as part of a family unit; 


(4) The length of time the surname has been used; 


(5) Parental misconduct, such as support or non-support or maintaining
or failing to maintain contact with the child;


(6) The degree of community respect associated with the present or
changed name; 


(7) Whether the change will positively or adversely affect the bond
between the child and either parent or the parents' families; 


(8) Any delay in requesting or objecting to name change; 


(9) The preferences of the child; 


(10) The age and maturity of the child; 


(11) When the child maintains the mother's surname, assurances by the
mother that she would not change her name if she married or
remarried; and


(12) Whether the parent seeking the change is motivated by an attempt to
alienate the child from the other parent.


In re Guthrie, 45 S.W.3d at 725-26. 

 Using the foregoing factors as a framework for our analysis, we conclude that the
evidence is legally sufficient to support the finding that the name change is in Julie's best
interest. 

 We begin with the first factor. There is no evidence that the name Scoggins would
cause Julie or Yolanda any embarrassment, inconvenience, or confusion. See id. at 725. 
In contrast, the uncontroverted evidence shows that the name Trevino allows for confusion
to persist about Julie's biological familial relationships. The name Trevino makes it unclear
that Billy Ray is Julie's father, a fact which Billy Ray admits using for the purposes of
deception. Confusion about the identity of Julie's father, half siblings, and other close
relatives could easily cause Julie embarrassment, humiliation, and inconvenience now and
in the future. See Newman v. King, 433 S.W.2d 420, 423 (Tex. 1968) (considering a
name's "humiliating, embarrassing, confusing, and, in reasonable probability, disruptive"
effects on child in evaluating child's best interest). This is especially true because Julie and
her half-siblings live in a "very small community," have regular contact, and are unaware of
their biological relationships. Based on this evidence, we conclude that the name Scoggins
is favored under the first factor. 

 The second factor asks whether it would be more convenient or easier for the child
to have the same name as the custodial parent or to have a different name. See Guthrie,
45 S.W.3d at 725. There is no evidence that the name Scoggins would be more or less
convenient for Julie than the name Trevino. Although Billy Ray contends that the name
change would cause him a great deal of inconvenience, we understand this factor to relate
to the convenience and preference of the custodial parent and child, not non-custodial
parent. See id. Because there is no evidence as to which name would be easier or more
convenient for Julie to have, we conclude that the second factor does not militate 
meaningfully in either direction. See In the Interest of M.C.F., 121 S.W.3d 891, 897 (Tex.
App.--Fort Worth 2003, no pet.) (emphasizing custodial parent's testimony that name
change would be burdensome in holding name change not in child's best interest).

 Looking to the third factor, which deals with the child's identity in a family unit, the
uncontroverted evidence shows that Julie is not identified or recognized in the community
as belonging to a family unit with Billy Ray. See In re Guthrie, 45 S.W.3d at 726. This is
ostensibly because Julie and Billy Ray have different last names and live in different homes. 
Billy Ray testified that no one in the community knows that Julie is his daughter and that
people would discover his parent-child relationship with Julie if she took his last name. 

 Although Julie and Billy Ray are not identified in the community as belonging to the
same family unit, the record shows that Yolanda and Billy Ray have continuously
maintained something of a "family unit" together. Yolanda and Billy Ray have had an
ongoing romantic relationship for the last 10 to 12 years, since before Julie was born. By
all accounts, Julie recognizes Billy Ray as her father and describes him as "loving." Until
very recently, Billy Ray and Yolanda owned a home together and Billy Ray provided
Yolanda with an automobile. He also kept all the utility accounts for the house in his name
and provided Yolanda with home furnishings. Despite taking his name off the deed to the
house and changing the utilities, Billy Ray wrote a letter to Yolanda, which reads in part, "I
love you very much. I wish you would not leave me." He also assured the social worker
that he continues to care for Yolanda and that their relationship is ongoing. Although
Yolanda has asked to move out of state, Billy Ray has reportedly insisted that she remain
in their small community. Billy Ray continues to visit Julie at the home where Yolanda and
Julie live and display their family portrait of themselves with Billy Ray.

 Based on this evidence, it would be reasonable to conclude that the name Scoggins
would be more likely to identify Julie with the "family unit" that Billy Ray and Yolanda have
maintained than the name Trevino, which Billy Ray has used to hide his extra-marital family
unit. 

 The fourth factor is neutral in this case. See id. Although Julie has had the name
Trevino her entire life, she is still very young and was only nine-years' old at the time of trial. 
We cannot conclude that this period of time is so significant that the fourth factor would
favor the name Trevino. Nor can we conclude that the amount of time is so insignificant
that it would favor the name Scoggins. To the extent we can draw any conclusions from
Julie's age and her preferences, we do so in our analysis of the ninth and tenth factors. 

 In evaluating the fifth factor, parental misconduct, we are drawn to Billy Ray's
admission that the name Trevino allows him to hide his relationship with Julie. See id. We
are also mindful of Billy Ray's refusal to take Julie during his extended visitation periods and
how that has enabled him to keep Julie a secret from his wife and other children. This
deceptive scheme has been so successful that Billy Ray has been able to maintain a
household for Yolanda and Julie and to even pay for Julie to attend the same dance and
gymnastics classes as his daughter and granddaughter, who have no idea they are related
to Julie. 

 The scheme has also kept Julie from forming any appropriate familial bonds or
relationships with her half-siblings even though they have frequent contact. The record is
silent as to whether Julie knows that Billy Ray has a second family or that he has other
children, including another daughter who is almost Julie's age and is in Julie's gymnastics
class. The record is also silent as to whether Julie knows that her father opposes the name
change because he has kept Julie a "secret" for her entire life. The overwhelming and
uncontradicted evidence shows that Billy Ray has succeeded in an ongoing and elaborate
web of deception, in large part, because Julie does not have his last name. We therefore
hold that the fifth factor favors the name change. (1)

 The sixth factor is the degree of community respect associated with the present or
changed name. See Guthrie, 45 S.W.3d at 725. Although there is no evidence that the
name Trevino is or is not respected in the community, there is uncontradicted testimony that
the name Scoggins is held in high regard. Billy Ray owns and operates a prominent
construction company, Scoggins Construction Company, that has been awarded contracts
to build seven local public schools. Because the uncontradicted testimony shows that the
Scoggins name is well respected in the "very small community" where Julie lives, this factor
also favors the name Scoggins. See M.C.F., 121 S.W.3d at 897 ("The child would be better
served with a name that is positively associated with the community"). 

 The seventh factor is whether the change will positively or adversely affect the bond
between the child and either parent or the parents' families. See In re Guthrie, 45 S.W.3d
at 725. This is perhaps the most hotly-contested factor on appeal. According to the social
study report, Julie currently gets only "minimal time and attention" from Billy Ray. The report
notes that Billy Ray has promised to "decrease or end his relationship" with Julie if her name
is changed. In reaching its conclusion that the name change is not in Julie's best interest,
the report notes that this "result would be devastating and terribly unfair to Julie." The report
also questions why Billy Ray would "decrease or end his relationship" with Julie because
of the name change. The report suggests two possibilities: (1) "Mr. Scoggins' wife would
not accept the relationship (as Mr. Scoggins has indicated)"; or (2) "because Mr. Scoggins
was angry at Ms. Trevino's actions."

 We begin with the first possibility, which Billy Ray argues on appeal and apparently
articulated to the social worker during her study. According to Billy Ray's appellate brief,
the name change would cause "troubles" and "discord" in his marriage because his wife
does not know about Julie. Marital troubles would, in turn, have a chilling effect on his
relationship with Julie. 

 The evidence does not support these statements. In fact, Billy Ray testified that his
wife Linda already knows about Julie: "I don't know that it was Yolanda [who] called. 
Someone called my wife and told her about the child. She had no idea . . . . " Counsel's
arguments based on Linda's ignorance of the situation are implausible on this record.

 There is no testimony or other evidence in the record to show how Linda reacted to
the news of Billy Ray's out-of-wedlock child with Yolanda. There is no evidence of whether
or not Linda's knowledge of Julie actually created the marital "troubles" and "discord"
mentioned in Billy Ray's appellate brief. 

 Also notable is the fact that the social study report does not reflect Linda's knowledge
of Billy Ray's parent-child relationship with Julie. This is especially noteworthy because the
social study was conducted after Billy Ray testified that Linda already knew about Julie. We
question why the social study report is premised on the fact that Linda does not know about
Julie, when that fact is apparently false and unfounded. 

 In reviewing the report, we notice that the social worker's interview with Billy Ray was
conducted, at his suggestion, "at a local restaurant for the sake of confidentiality from his
other family members." The social worker never spoke to Linda or to any of Billy Ray's
other children or grandchildren to determine how much they know about Julie and Yolanda
or how they feel about the situation. 

 The uncontroverted testimony is that Linda already knows about Julie. There is no
evidence that Linda's acceptance or rejection of the parent-child relationship between Billy
Ray and Julie will depend on whether Julie's last name is Scoggins or Trevino. There is no
evidence that Linda would accept the relationship if Julie kept the name Trevino or that she
would reject the relationship if Julie took the name Scoggins. In short, there is no evidence
in the record to support Billy Ray's contention that the name change would cause marital
problems that would, in turn, have a chilling effect on his relationship with Julie. In holding that the evidence does not indicate that the name Scoggins would
adversely affect the bond between Julie and either of her parents or their families, we note
that a name-change decision cannot be based on the "self-serving arguments of the father
rather than evidence of substantial harm to the welfare of the child." In the Interest of J.K.,
922 S.W.2d 220, 223 (Tex. App.--San Antonio 1996, no writ). 

 Before proceeding to the next factor, we pause to review the second possibility
offered by the social worker (i.e., that Billy Ray may "decrease or end his relationship" with
Julie because he was "angry" about Yolanda's actions). Although Billy Ray does not argue
this point on appeal, there is at least some support for it in the record. Billy Ray testified
that he is against the name change and that he would be "embarrassed" if his relationship
with Julie were no longer a secret. 

 Nevertheless, Billy Ray never actually testified that he would "decrease or end his
relationship" with Julie because of his anger and embarrassment. Instead, he testified that
he has maintained a "good" parent-child relationship with Julie and has continuously
maintained that he is "a good family man." He gave the trial court no indication that he
would "decrease or end his relationship" with Julie under any circumstances. The only
evidence that Billy Ray's anger and embarrassment might adversely affect his relationship
with Julie is the social study report, which references out-of-court statements reportedly
made by Billy Ray. Aside from being inadmissible hearsay, these are the type of self-serving statements on which the courts have been reluctant to base their name-change
decisions. See id. Social issues the father must face due to his actions, such as his
embarrassment in the community or anger about getting caught in a deceptive scheme, are
not of first concern in determining the best interest of a child. See id. Texas courts have
long held that a parent's interests or desires are only secondary considerations in
proceedings such as this. See, e.g., Ex parte Taylor, 322 S.W.2d 309, 312 (Tex. Civ. App.-El Paso 1959, no writ). 

 We turn to the eighth factor. See In re Guthrie, 45 S.W.3d at 725. Although a delay
in requesting a name change may indicate that the change is not in the best interests of the
child, we do not find that to be the case here. There is no testimony or other evidence in
the record to indicate whether there was a delay, and if so, whether the delay would militate
for or against a name change. 

 The ninth factor concerns the preferences of the child. See id. Yolanda testified that
Julie's preference is to be named Scoggins, like her father. The social study report also
reflects that Julie's preference is to be named Scoggins. Billy Ray testified that he did not
know Julie preferred the name Scoggins and that she has never asked him why she does
not have that name. Although Judge Alejandro met with Julie in chambers to discuss her
preferences, no record was made of that discussion and Judge Alejandro did not indicate
what he understood Julie's preferences to be. Based on the evidence in the record, we
conclude that the ninth factor favors a name change. 

 The age and maturity of the child are the focus of the tenth factor. See id. Julie was
about nine years' old during this proceeding. The testimony shows that Julie understands
the significance of last names and the importance of the relationship she has with Billy Ray,
whom she describes as a "loving" father. In contrast, Billy Ray's opposition to the name
change appears to be motivated by a design to keep Julie distanced from himself and the
people he views as his "family." This factor thus militates in favor of a name change. 

 The eleventh factor is inapplicable here. 

 The twelfth factor asks whether the parent seeking the change is motivated by an
attempt to alienate the child from the other parent. See id. at 726. There is no such
evidence in the record. To the extent any inferences can be drawn from the limited
evidence concerning Yolanda's motives, the name change appears to be an attempt to
unite Billy Ray and Julie in a community-recognized, parent-child relationship that is not a
"secret." This factor thus favors the name change. 

 Having reviewed the entire record in the light most favorable to the trial court's ruling,
we cannot conclude that the evidence is legally insufficient. See City of Keller v. Wilson,
168 S.W.3d 802, 807 (Tex. 2005). There is no basis for concluding that the trial court
abused its discretion in granting the name change. See Butnaru v. Ford Motor Co., 84
S.W.3d 198, 211(Tex. 2002) ("The trial court does not abuse its discretion if some evidence
reasonably supports the trial court's decision.").

 Billy Ray's first issue is overruled. 

B. Piecemeal Trial 

 In support of his second issue, Billy Ray makes the following argument: 

In this case, Judge Hester heard the testimony on . . . June 10, 2004. Judge
Alejandro only spoke to the child . . . who was too young to give credible
evidence of what [is] in her own best interest. Judge Alejandro heard no other
evidence. As a matter of due process and as a matter of fair and open
courts, Judge Hester should have heard the remainder of the evidence and
made the final decision in this case. 


 We find no error on the record before us. First, Billy Ray has pointed to no other
evidence that "Judge Hester should have heard." After the June 10, 2004 hearing before
Judge Hester, no additional testimony was heard by the court. It is unfair to criticize the
court for not allowing Judge Hester to hear additional evidence when none was offered. 
Second, Judge Hester signed the final order granting Julie's name change. Although Judge
Alejandro clearly agreed with that judgment and had access to the entire record, including
a transcript of the relevant testimony, Judge Hester entered the written order from which
Billy Ray now appeals. 

 The second issue is overruled. The order is affirmed. 


 _______________________

 DORI CONTRERAS GARZA,

 Justice


Opinion delivered and filed 

this the 24th day of August, 2006.
1. The record contains testimony from Billy Ray that numerous civil and criminal complaints of
harassment and physical abuse have been brought against him and that those complaints arose from his
relationship with Yolanda. In addition, the social study report noted that Billy Ray has reportedly attempted
to strangle Yolanda in the past. 


We have reviewed the entire record and have found no evidence of any civil judgments or criminal convictions
against Billy Ray. We note that Billy Ray testified that some of the cases against him were either dropped or
dismissed for unclear reasons and did not specify whether they were dismissed with or without prejudice. He
neither admitted nor denied any of the complained-of conduct. 


Although Billy Ray's testimony indicates that he may have committed some additional acts of misconduct that
might be relevant to Julie's best interest in this name change proceeding, we conclude that the testimony is
no evidence of misconduct because it merely raises a suspicion and amounts to no more than a scintilla of
proof that the misconduct actually occurred. See City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005). 
Likewise, the misconduct mentioned in the social study report is no evidence because it is only an out of court
statement by Yolanda that amounts to inadmissible hearsay. See id.