NUMBER 13-06-373-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


RAMONA CASAS AND 

CLAUDETTE DENIZ CASAS, Appellants,


v.
 


FELIPE ADRIANO AND 

MARIA ANGELA ADRIANO, Appellees.

 


On appeal from the 92nd District Court 

of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Benavides and Vela


Memorandum Opinion by Justice Vela



 This is an appeal from an order granting paternal grandparents, Felipe and Maria
Adriano (the Adrianos), possession and access to their minor grandchild, F.A. By three
issues, Ramona Casas, F.A.'s maternal grandparent, and Claudette Casas, F.A.'s
biological mother (collectively "the Casases"), complain that the trial court abused its
discretion by granting the Adrianos access to and possession of F.A., by not ordering
statutorily required warnings in its order granting access, and in excluding the
testimony of a non-disclosed witness. We affirm. 

I. Background

 F.A., the child subject of this suit, was born December 16, 2000. In 2002, his
biological parents, Felipe Adriano Jr. and Claudette Casas, were arrested on charges
of physical abuse of F.A.'s five month old sister, who sustained severe physical
injuries and later died as a result of those injuries. According to the record, F.A.'s
parents were unable to explain the injuries and were arrested for the infant's death. 
F.A.'s father was subsequently found guilty of the infant's murder and was sentenced
to 25 years in prison. F.A.'s mother, Claudette, who was also incarcerated for a short
period of time, pled guilty to the offense of injury to a child, and received a community
supervision sentence.

 In 2003, the trial court terminated the parental rights between F.A. and his
father as a result of his father's conviction for the murder of F.A.'s infant sister. 
Several months later, the court entered a final order in a suit affecting the parent-child
relationship. In that order, the court found that "appointment of a parent or both
parents as managing conservator would not be in the best interest of [F.A] because
the appointment would significantly impair the child's physical health or emotional
development." Instead, the court appointed F.A.'s maternal grandmother, Ramona
Casas (Claudette Casas' biological mother), as permanent managing conservator of
F.A, and appointed F.A.'s mother, Claudette Casas, as possessory conservator of the
child, with rights of access to and possession of F.A. At that time, the trial court did
not award visitation to any "non-parties," which included F.A.'s paternal grandparents,
the Adrianos.

 In February 2005, the Adrianos filed an original petition for grandparent access
to F.A. In September 2005, the trial court signed an "Order Granting Petitioners'
Request for Temporary Grandparent Access, Setting Status Conference and Setting
of Final Hearing." In that order, the Adrianos were permitted to visit F.A. one hour per
week, from 4:00 p.m. to 5:00 p.m., at the offices of Solis & Associates in Edinburg. 
The order also required the Adrianos to pay Solis & Associates two-hundred fifty
dollars before any visitation period.

 On March 28, 2006, the trial court conducted a bench trial on the issue of the
Adrianos' possession of and access to F.A. After receiving evidence and hearing
testimony, the trial court granted the Adrianos' petition for possession of and access
to F.A., and specifically found that "denial of possession and access to the paternal
grandparents (the Adrianos) would significantly impair the child's physical health or
emotional well-being." The order stated that the Adrianos "are granted the child as
follows:"

 First, Third and Fifth Saturdays of each month from 10:00 to 6:00
p.m. The paternal grandparents shall pick up the child at the residence
of Ramona Casas at the commencement of the visitation period, and the
child shall be returned to the residence of Ramona Casas at the end of
the visitation period. It is further ordered, that any and all paternal
grandparent possession/access shall terminate upon the release of Felipe
Adriano, Jr. from prison. (Emphasis added)


 It is from this order that Ramona and Claudette Casas appeal.

II. Absence of Findings of Fact and Conclusions of Law

 Before discussing the issues raised, we point out that findings of fact and
conclusions of law were neither requested nor filed following this bench trial. In such
situations, the judgment of the trial court implies all necessary findings to support it,
provided the proposition is raised in the pleadings, supported by evidence, and the trial
judge's theory is consistent with the evidence and the applicable law. Schoeffler v.
Denton, 813 S.W.2d 742, 744 (Tex. App. Houston [14th Dist.] 1991, no writ);
Franklin v. Donoho, 774 S.W.2d 308, 311 (Tex. App.Austin 1989, no writ). When,
as in this case, a reporter's record is part of the record, the legal and factual
sufficiency of the implied findings may be challenged on appeal in the same manner
as jury findings or a trial court's findings of fact. Roberson v. Robinson, 768 S.W.2d
280, 281 (Tex. 1989); Wade v. Comm'n for Lawyer Discipline, 961 S.W.2d 366, 374
(Tex. App.Houston, [1st Dist.] 1997, no pet.). When the implied findings of fact are
supported by the evidence, the appellate court must uphold the judgment on any
theory of law applicable to the case. Giangrosso v. Crosley, 840 S.W.2d 765, 769
(Tex. App.Houston [1st Dist.] 1992, no writ). 

III. Analysis

 By their first issue, the Casases complain that the trial court abused its
discretion by granting the Adrianos possession of and access to F.A. because the best
interest of the child demands that the Adrianos comply with the requirements of the
Texas Grandparent Statute. Tex. Fam. Code Ann. § 153.433 (Vernon Supp. 2006). 
The Casases further argue that the testimony presented at trial was legally insufficient
to support the trial court's ruling, and that the ruling granting possession and access
was so against the great weight and preponderance of the evidence that the trial
court's only finding "fails to be factually sufficient."

IV. Standard of Review

 The trial court's decision in a suit for grandparent access and possession is
reviewed for abuse of discretion. See In re Derzapf, 219 S.W.3d 327, 333 (Tex.
2007). A trial court abuses its discretion when it acts in an arbitrary and unreasonable
manner, or when it acts without reference to any guiding principles. Scoggins v.
Trevino, 200 S.W.3d 832, 836 (Tex. App.Corpus Christi 2006, no pet.). Review of
the legal and factual sufficiency of the evidence in a possession or access case is
subsumed into the review for abuse of discretion. In re Marriage of Hale, 975 S.W.2d
694, 697 (Tex. App.Texarkana 1998, no pet.); Doyle v. Doyle, 955 S.W.2d 478,
479 (Tex. App.Austin 1997, no pet). Thus, legal and factual insufficiency are not
independent grounds of error, but are relevant factors in assessing whether the trial
court abused its discretion. Doyle, 955 S.W.2d at 479; Scoggins, 200 S.W.3d at
836. Where sufficiency review overlaps with the abuse of discretion standard, the
reviewing court engages in a two-pronged inquiry. Sandone v. Miller-Sandone, 116
S.W.3d 204, 206 (Tex. App.El Paso 2003, no pet.) First, the court determines
whether the trial court had sufficient information upon which to exercise its discretion.
Id. Second, the appellate court evaluates whether the trial court erred in applying its
discretion. Id. 

V. Governing Law

 To obtain access and possession in a grandparent access case, a petitioner must
prove, by a preponderance of the evidence, that:

 1. At least one of the child's biological or adoptive parents has not had
rights terminated.


 2. The child's physical health or emotional well-being would be significantly
impaired if the grandparents' access or possession were denied.


 3. The grandparent is the parent of the child's parent. 


 4. Any of the following is true:

 (1) The child's parent has been incarcerated for at least three months
before the petition was filed. 

 (2) The child's parent has been judicially declared incompetent. 

 (3) The child's parent is dead. 

 (4) The child's parent does not have actual or court-ordered
possession of or access to the child. 


Tex. Fam. Code Ann. § 153.433 (Vernon Supp. 2006).

 The Casases do not dispute that the Adrianos meet all but one of the statutory
requirements to bring a grandparent access case. They focus only on the requirement
of Section 153.433(2), which states that the trial court must find that the child's
physical health or emotional well-being would be significantly impaired if the
grandparent's access or possession were denied. The Casases contend that the trial
court abused its discretion in finding, by a preponderance of the evidence, that denying
the Adrianos possession and access to F.A. would significantly impair F.A.'s physical
health or emotional well-being. (1) Grandmother Casas, the appointed primary managing
conservator, acknowledges that she does not enjoy the presumption that Mother
Casas does when it comes to the applicability of the grandparent access statute. 
However, she argues that because she is the managing conservator of F.A., she has
the rights and duties specified in the Texas Family Code, including the duty of "care,
control, protection, and reasonable discipline of the child," along with "the duty to
provide the child with clothing, food, shelter, education, and medical, psychological,
and dental care." See Tex. Fam. Code. Ann. § 153.371(2)-(3) (Vernon 2006). She
argues that in order to fulfill her responsibility of ensuring proper physical health and
emotional well-being of the child, she must also ensure that the Adrianos meet the
requirements set forth in the grandparent access statutethat the denial of access to
or possession of F.A. to the Adrianos would significantly impair the child's physical
health or emotional well-being. Tex. Fam. Code Ann. § 153.433(2).

V. The Evidence

 At trial, Mr. Adriano testified that F.A. is "part of my blood, my family, and we
really love him because we helped raise him since he was little." He stated that F.A.
lived with the Adrianos for nearly a year, and that he and his wife took care of F.A.
He further stated that they (the Adrianos) "don't want to lose family contact with
him," and "all the family loves him, not just us." He testified that when he and his
wife visited F.A. at the firm of Solis & Associates, F.A. " . . . didn't want us to leave. 
He didn't want to be alone. In fact, he had to be held back by Ms. Casas because he
wanted to stay with us. He wanted--he wanted to go in the truck with me . . . . He
would hug us. He would kiss us. And he even called me dad, and he calls her (Mrs.
Adriano) mom."

 In later testimony, Mr. Adriano stated that F.A. was "well off" when he was
living with the Adrianos. Further testimony elicited from Mr. Adriano revealed the
following: "The child never had any problems with us . . . . He was 100 percent well
regarding his health and everything, just full of life. And the last time I saw him, he
was more, like, crestfallen and kind of sickly . . . . The last time I saw him I saw signs
that he was being affected because he was more used to being with my side of the
family . . . . So I think that he would get better if he got the chance to see us, to see
me." Mr. Adriano testified that he had previously complained to child protective
services that when the Casases delivered F.A. to the Adrianos during any visitation
period, F.A. was "dirty" and the milk in his bottle was "rotten."

 Beatrice Salinas, the Adrianos' daughter, testified that F.A. had numerous
cousins who lived close to the Adrianos, that F.A. was close to his cousins, and that
the Adrianos have half an acre of land where all of the children played together. She
further testified that F.A. was "a part of their life," that F.A. "loves them (the Adriano
grandparents) so much, he calls them mom and dad." She concluded her testimony
by pointing out that "[H]e's part of our life. He needs to know that he has more family
besides them that love him and are going to care for him, and that we miss him. He
needs to know that we're out there for him."

 The trial court made the following observations in making its ruling: 

 I think it would be more harmful to thislet's say
that, this child is five years old right now, okay, and let's
say the thought is, let's wait four, five years before these
paternal grandparents have any access to this particular
child. Ok. You've got to remember that this particular child
is five, by the time he's ten, okay, it may be more harmful
in order for that particular child to start to develop a
relationship with the paternal grandparents at the age of ten
than it is at the age of five . . . . But you know, you need
to focus on truly what's in the best interest of this child. 
And I don't know whether cutting the paternal grandparents
out of this particular child's life is in fact the best interest of
the child . . . that's a decision that is so contrary to what I
truly, truly believe would be beneficial to the child."


It is clear from the trial court's comments that its focus was the best interest of the
child, pursuant to its duty under the Texas Family Code. Tex. Fam. Code Ann. §
153.002 (Vernon 2002) ("The best interest of the child shall always be the primary
consideration of the court in determining the issues of conservatorship and possession
of and access to the child."). We note that the trial court did not give the Adrianos
unlimited or even overnight visitation with F.A.; it only allowed the Adrianos to see
F.A. on the first, third, and fifth Saturdays of each month for an eight hour period. 
Further, the trial court specifically interlineated a safeguard into the order that provides
that "any and all paternal grandparent possession/access shall terminate upon the
release of Felipe Adriano, Jr. from prison."

 From the evidence adduced, the trial court could have reasonably concluded that 
F.A.'s health and emotional well-being would be significantly impaired by denial of
access. F.A. had previously resided with the Adrianos and was close enough to them
that he considered them his "mom" and "dad." It appears that the trial court
considered this close prior relationship in making a decision regarding access. It was
within the court's realm of discretion to infer that a break in a close familial
relationship could seriously affect F.A.'s emotional well-being. Further, the trial court
could have decided that the deprivation of love, care, and affection from one-half of
the child's family would cause significant impairment to the child's emotional well-being.

 After conducting a review of the legal and factual sufficiency of the evidence,
we cannot say that the trial court abused its discretion by finding that the Adrianos
showed by a preponderance of the evidence that denial of their possession of and
access to F.A. would significantly impair the child's physical health or emotional
well-being. See Derzapf, 219 S.W.3d at 333. Issue one is overruled.

 By their second issue, the Casases contend that the trial court abused its
discretion by failing to order safeguards, including statutorily required warnings, in the
final order granting possession of F.A. The record reflects, however, that these
proposed statutory "safeguards" were not requested of the trial court. The Casases
have not preserved this point for appellate review. Tex. R. App. P. 33.1. Issue two
is overruled.

 By their third issue, the Casases assert that the trial court abused its discretion
by excluding the testimony of F.A.'s child psychologist, and therefore failed to
consider the best interest of the child when entering its final orders. The Casases
concede that the psychologist in question, Dr. Mary Elizabeth De Ferreire, was not
disclosed as a testifying witness during the discovery process. 

 A trial court's decision to exclude testimony from a witness not previously
disclosed during discovery can only be overturned upon a finding of an abuse of
discretion. Mentis v. Barnard, 870 S.W.2d 14, 16 (Tex. 1994). After a review of the
record in this case, we find no abuse of discretion by the trial court not permitting the
non-disclosed witness to testify. Appellants' third issue is overruled.

 The trial court's judgment is affirmed.

 

 

 ROSE VELA

 Justice


Memorandum Opinion delivered and 

filed this 5th day of July, 2007.

1. The premier case governing grandparent access is Troxel v. Granville, 530 U.S. 57 (2000). 
Troxel held that a parent has a fundamental right to decide who has access to a child, assuming the
parent is "fit." See id. at 66. The Troxel Court described a fit parent as one who "adequately cares"
for his or her children. Id. at 68. In this case, Troxel does not apply because neither parent is presumed
"fit," and this case is essentially a dispute between both maternal and paternal biological grandparents. 
We reach this conclusion based on the evidence in the record that F.A.'s father was convicted of
murder, and the trial court specifically found that "appointment of a parent or both parents as managing
conservator would not be in the best interest of [F.A.] because the appointment would significantly
impair the child's physical health or emotional development."