NUMBER 13-06-548-CV



COURT OF APPEALS
 


THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


FRANK BANTA, Appellant,


v.


TEXAS DEPARTMENT OF

FAMILY AND PROTECTIVE SERVICES, Appellee.

 


On appeal from the 33rd District Court 


of Burnet County, Texas.

 

 

MEMORANDUM OPINION



Before Justices Garza, Benavides, and Vela


Memorandum Opinion by Justice Garza
 

Appellant, Frank Banta, appeals the denial of his request for grandparent access
to his granddaughter, S.B. Because we hold the trial court did not abuse its discretion, we
affirm the trial court's judgment.


I. Factual and Procedural Background

S.B. was born to Banta's daughter Hollie on March 4, 2002. Hollie and S.B. moved
in with Banta when S.B. was one year old. They lived with him for approximately one year. 
S.B. was removed from Hollie's care on November 3, 2004, by Child Protective Services
(CPS). The Texas Department of Protective and Regulatory Services (TDPRS) filed an
Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit
Affecting the Parent-Child Relationship (SAPCR). Hollie executed an Affidavit of
Relinquishment of Parental Rights. S.B.'s father, David Doubleday, was not involved in her
life. He had not paid any substantial child support and had not seen S.B. in over a year
and a half. TDPRS was not able to locate David. See Tex. Fam. Code Ann. § 161.107(b)-(e) (Vernon 2006). He was served by publication. See id. 

On August 23, 2005, Banta intervened in the suit seeking managing conservatorship
of S.B. On December 5, 2005, Banta filed a supplemental petition requesting grandparent
access to S.B. pursuant to Texas Family Code sections 153.432 and 153.433. See Tex.
Fam. Code Ann. §§ 153.432, 153.433 (Vernon 2006). At a final hearing in the SAPCR on
December 6, 2005, Hollie and David's parental rights were terminated. During this hearing,
Banta abandoned his request for conservatorship of S.B. and proceeded only on his
request for grandparent access. The trial court heard evidence and argument of counsel
on Banta's request for grandparent access. The trial court did not rule on the request and
instead took the request under advisement. A final order in the SAPCR was entered on
December 6, terminating both parents' rights and appointing the TDPRS as permanent
managing conservator. The order further provided that S.B. would remain in the home of
Theresa and James Blankenburg "until the final adoption is consummated" by the
Blankenburgs. On June 13, 2006, the court modified the above order and named the
Blankenburgs managing conservators of S.B. On August 29, 2006, the court entered an
order denying Banta's request for access. The court found that Banta's requested access
to S.B. was not in her best interest and that the denial of court-ordered access "will not
significantly impair the child's physical health or emotional well-being." This appeal
ensued. (1)

II. Plea to the Jurisdiction

Prior to the filing of the appellate briefs in this case, the attorney ad litem for S.B.
filed a plea to the jurisdiction claiming that, because the adoptive parents are not parties
to the lawsuit nor to the appeal, this Court is without jurisdiction to proceed. (2) The ad litem
raises this issue for the first time on appeal. She never complained to the trial court that
the adoptive parents were necessary parties as required by the rules of civil procedure. 
See Tex. R. Civ. P. 39.

Prior to the amendment of rule 39 in 1971, a failure to include an indispensable
party was fundamental error which could be raised to attack the court's jurisdiction on
appeal. See, e.g., Petroleum Anchor Equip., Inc. v. Tyra, 406 S.W.2d 891, 893 (Tex.
1965); Sharpe v. Landowners Oil Ass'n, 92 S.W.2d 435, 436 (Tex. 1936). The amendment
to rule 39 in 1971 rendered inoperative most of the potential for fundamental error due to
failure to include an indispensable party. McBurnett v. Gordon, 534 S.W.2d 370, 372 (Tex.
Civ. App.-Beaumont 1976, writ ref'd n.r.e.). (3) 

"Under the provisions of our present Rule 39 it would be rare indeed if there were
a person whose presence was so indispensable in the sense that his absence deprives the
court of jurisdiction to adjudicate between the parties already joined." Cooper v. Tex. Gulf
Indus., Inc., 513 S.W.2d 200, 203 (Tex. 1974); see Cox v. Johnson, 638 S.W.2d 867,
867-68 (Tex. 1982) (disapproving of this Court's holding that failure to join a necessary
party was fundamental error, but denying the writ of error because of other meritorious
issues in the appeal). The supreme court in Cooper explained, "Contrary to our emphasis
under Rule 39 before it was amended, today's concern is less that of the jurisdiction of a
court to proceed and more a question of whether the court ought to proceed with those
who are present." Cooper, 513 S.W.2d at 204; see Brooks v. Northglen Ass'n, 141 S.W.3d
158, 162-63 (Tex. 2004) (stating that whether suit should be dismissed because the zoning
board was not joined as a defendant is a prudential rather than jurisdictional question);
Griggs v. Latham, 98 S.W.3d 382, 385 (Tex. App.-Corpus Christi 2003, pet. denied) (citing
Cooper, 513 S.W.2d at 204; Hedley Feedlot, Inc. v. Weatherly Trust, 855 S.W.2d 826, 832
(Tex. App.-Amarillo 1993, writ denied)); Gomez v. Kestermeier, 924 S.W.2d 210, 212
(Tex. App.-Eastland 1996, writ denied) (the failure to join parties, even those necessary
and indispensable, is not jurisdictional). 

Accordingly, we need not address the ad litem's plea to the jurisdiction because the
contention raised is not a jurisdictional issue. Further, because the ad litem did not object
at the trial level to the non-joinder, the issue was waived. Tex. R. App. P. 33.1(a)(1);
Brooks, 141 S.W.3d at 163. (4) 

III. GRANDPARENT ACCESS

 In his first issue, Banta claims that the second prong of Texas Family Code section
153.433 does not apply when the State is already involved in the parent-child relationship. 
The statute provides, in relevant part:

The court shall order reasonable possession of or access to a grandchild by
a grandparent if:


(1) at the time the relief is requested, at least one biological or adoptive
parent of the child has not had that parent's parental rights terminated; and


(2) the grandparent requesting possession of or access to the child
overcomes the presumption that a parent acts in the best interest of the
parent's child by proving by a preponderance of the evidence that denial of
possession of or access to the child would significantly impair the child's
physical health or emotional well-being; and

 

 * * * *

Tex. Fam. Code Ann. § 153.433. 

 The Department does not concede that the second prong of section 153.433 does
not apply when a child has been removed from the parents and placed in temporary
managing conservatorship of the Department. However, the Department does not dispute
that the presumption does not apply when, as in the present case, the parental rights of
both parents have been terminated. (5) Although neither party has provided any authority in
support of this contention, we agree that the presumption is inapplicable given the facts of
this case. 

 The leading case involving grandparent access is Troxel v. Granville, 530 U.S. 57
(2000). In Troxel, the United States Supreme Court held that a parent has a fundamental
right to decide who has access to a child, assuming the parent is "fit." See id. at 66. 
However, because the trial court in the present case terminated the rights of both of S.B.'s
parents, neither could be presumed "fit" at the time the trial court considered Banta's
request. See id. at 68. Thus, we proceed to review Banta's second issue without taking
into consideration the "fit" parent presumption. 

 In his second issue, Banta asserts that the trial court abused its discretion in finding
that it was not in the best interest of S.B. to have visitation with him and that the denial of
court ordered access to S.B. would not significantly impair S.B.'s physical health or
emotional well-being because there is no evidence to support the finding. (6) Banta relies on
sections 153.432 and 153.433 of the family code. See Tex. Fam. Code Ann. §§ 153.432,
153.433. Section 153.432 of the family code gives grandparents standing to petition the
court for access to or possession of a child. See Tex. Fam. Code Ann. § 153.432. Section
153.433 identifies the conditions under which such possession or access will be granted. 
See Tex. Fam. Code Ann. § 153.433. 

 Access pursuant to section 153.433 is subject to the trial court's determination of
the best interest of the child. See Tex. Fam. Code Ann. §153.002 (Vernon 2002); In re
W.M., 172 S.W.3d 718, 728 (Tex. App.-Fort Worth 2005, no pet.). The trial judge is given
wide latitude in determining the best interests of a minor child. Gillespie v. Gillespie, 644
S.W.2d 449, 451 (Tex. 1982); Leithold v. Plass, 413 S.W.2d 698, 701 (Tex. 1967). The
family code does not define or set out the relevant factors to be considered when
determining whether an action is in the best interest of a child. Rather, the trial judge
considers a nonexhaustive list of considerations for determining a child's best interest. See
Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976) (enumerating list of factors to
ascertain best interest of child in parental termination context). Among the factors are the
following relevant considerations: (1) the desires of the child; (2) the emotional and
physical needs of the child now and in the future; and (3) the emotional and physical
danger to the child now and in the future. See id. 

 The trial court's judgment regarding what serves the best interest of the child with
regard to access is a discretionary function and will only be reversed a determination that
the trial court abused its discretion. See In re Derzapf, 219 S.W.3d 327, 333 (Tex. 2007);
MacCallum v. MacCallum, 801 S.W.2d 579, 582 (Tex. App.-Corpus Christi 1990, writ
denied). A trial court abuses its discretion when it acts in an arbitrary and unreasonable
manner, or when it acts without reference to any guiding principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985); Scoggins v. Trevino, 200 S.W.3d
832, 836 (Tex. App.-Corpus Christi 2006, no pet.). We may not reverse for abuse of
discretion merely because we disagree with a decision of the trial court. Downer, 701
S.W.2d at 242. An abuse of discretion does not occur where the trial court bases its
decisions on conflicting evidence. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); see
also Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997). Furthermore, an abuse of
discretion does not occur as long as some evidence of substantive and probative character
exists to support the trial court's decision. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211
(Tex. 2002). 

 Banta claims that the evidence at trial "clearly shows that [he] and [S.B.] developed
a relationship and it is clearly in [S.B.'s] best interest that she be allowed to see [him]." In
support of this claim, Banta points to evidence that S.B. lived with him for one year and
claims that they "bonded" during that year. At trial, Banta testified that he and S.B. would
get up early in the mornings and eat breakfast. They would go for walks two or three times
a day, and S.B. would pick flowers. He would take S.B. to his job-sites, where his co-worker said he was the most "competent baby-sitter he'd ever seen in his life." Banta also
testified he took S.B. to the zoo and carried her when she got tired. At trial, Banta claimed
he and S.B. developed a loving grandfather-granddaughter relationship. On appeal, Banta
also claims "there is no evidence [that] [sic] ending S.B.'s relationship with [him] will not
harm her. To the contrary, the evidence demonstrates the close relationship she had with
[him] contributes greatly to her emotional well being." In support of this complaint Banta
points to the lack of "credible" evidence that there was ever any improper sexual contact
between him and S.B. (7) 

 Although Banta claims there is no evidence to support the trial court's finding that
it is not in S.B.'s best interest for him to have access, the record speaks to the contrary. 
On cross-examination, Banta acknowledged S.B. was living in his home when she was
removed by CPS because she had suffered a burn while under Hollie's care. He admitted
when CPS came out, S.B. was dirty and didn't have a diaper on. Banta stated, "It looked
pretty bad, I admit, but that was an exception to the rule." He also admitted that his house
was dirty and that CPS found weapons all over the house, including knives and guns. A
CASA report in the record indicates Banta admitted to allowing S.B. to play with knives and
a drill press. 

 Theresa Blankenburg testified that she had taken care of S.B. for almost one year. 
During that time, she permitted Banta access until she was advised by S.B.'s therapist that
it was in S.B.'s best interest not to see Banta anymore. Blankenburg testified that S.B. is
"scared of her grandpa, and she does not want to see him." Blankenburg claimed S.B.
tells her this "all the time." When she would get her ready for visitation with him, "[S.B.]
would cry and stuff because she did not want to go . . . . She would be very angry." Lee
Goding, a Court Appointed Special Advocate (CASA) assigned to the case, testified that
the report from the therapist indicated S.B. has "issues" with Banta. (8) Goding further
testified S.B. was taking Zantac during the time she would go on visits with Hollie and
Banta, which she believed to be indicative of the stress S.B. was under. Based on the
report and S.B.'s "acting out," Goding recommended denying visitation. 

 Based on the record before us, and keeping in mind that we have not been provided
with a copy of the CASA reports and therapist report, we cannot say the trial court abused
its discretion in denying Banta's request for grandparent access to S.B. Accordingly,
Banta's second issue is overruled.

 In his third issue, Banta complains that the court's order is an impermissible
advisory opinion because the trial court did not clearly decide whether he would have
access. The basis for Banta's complaint is a "note to the parties" in the order which states: 

Notwithstanding the foregoing, it is not the Ruling of the Court that Frank
Banta must never have any contact with the child, but instead, finds that it is
in the child's best interest to leave the determination of Frank Banta's access
to the child with the child's caretakers (and/or adoptive parents) as to where,
when and under what circumstances there should be any future contact
between Frank Banta and the child.


Banta claims the above language makes the trial court's order contingent on future events. 

 Banta's complaint is without merit. The order clearly states the trial court's decision
to deny Banta's request for access. Specifically, located on the order just above the note
to the parties section, is the trial court's ruling: "Accordingly, it is ordered, adjudged and
decreed that Frank Banta's Petition in Intervention Requesting Grandparent Access is, in
all things, Denied." And just below the note to the parties, the order also contains a mother
hubbard clause stating: "All relief requested by any party which is not specifically granted
herein is Denied." 

 Banta's request for access was clearly denied and not contingent on any future
event. We conclude the "note" by the court was more akin to a request or suggestion that
the parties continue to do what is in S.B.'s best interest in the future, which despite the trial
court's denial of Banta's court-ordered request for access, does not preclude the parties
from reaching an agreement regarding access on their own prerogative. We think the trial
court's intent was best put into words by the Fort Worth Court of Appeals when it said: 

[W]e can say that the law does not have all the answers, and we can say that
a two-year-old's complete loss of the two most long-term, stable influences
in his life cannot be a good thing, and we can implore the four adults who
claim to love these children and want what is best for them to work toward
a private compromise outside the legal system that will ensure the children's
bright, stable future without erasing the positive remnants of their past.


In re W.M., 172 S.W.3d at 730. Banta's third issue is overruled. 

 The judgment of the trial court is affirmed.

 

 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 26th day of July, 2007.

1. The court's December 6, 2005 hearing references the pending adoption of S.B. by the Blankenburgs. 
The record of the adoption proceeding is not before us. Accordingly, our review is limited to the record before
us and the parties involved in those proceedings. 
2. "Jurisdiction" refers to a court's authority to adjudicate a case. Reiss v. Reiss, 118 S.W.3d 439, 443
(Tex. 2003) (citing Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 75 (Tex. 2000)). "In general, as long as the
court entering a judgment has jurisdiction over the parties and the subject matter and does not act outside
its capacity as a court, the judgment is not void." Id.
3. The very title of the rule was changed from "Necessary Joinder of Parties" to "Joinder of Persons
Needed for Just Adjudication." For specific pre-and post-amendment changes see Petroleum Anchor
Equipment, Inc. v. Tyra, 406 S.W. 2d 891, 893 (Tex. 1966) and the current version of Texas Rule of Civil
Procedure 39.
4. We note that the ad litem did file a motion in opposition to intervention; however, she filed it on
standing grounds and not on non-joinder grounds. See Tex. R. App. P. 33.1(a)(1). 
5. In the present case, the rights of S.B.'s parents were terminated the day after Banta filed his request
for grandparent access and before the trial court considered and ruled on Banta's request for grandparent
access.
6. The Department claims that if this Court were to issue an opinion granting access to S.B., the opinion
would impinge upon the rights of S.B.'s adoptive parents because they are not parties to the appeal; thus, our
opinion would be advisory. However, given the disposition of the appeal, we need not address this contention.

7. We note that other than Banta's bare contention that his close relationship with S.B. contributes to
her emotional well-being and his brief description of his interaction with S.B., Banta failed to argue or explain
how or why these interactions or lack thereof affect S.B.'s emotional or physical needs. See Tex. R. App. P.
38.1(h). 
8. The court took judicial notice of the CASA reports which included the therapist's report
. These
reports have not been made part of the appellate record.