

# NUMBER 13-24-00285-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

### IN THE MATTER OF THE MARRIAGE OF JASON BRYANT AND LINDSEY BRYANT AND IN THE INTEREST OF B.B. AND S.B., CHILDREN

### ON APPEAL FROM THE 267TH DISTRICT COURT OF VICTORIA COUNTY, TEXAS

## OPINION

### Before Justices Silva, Peña, and Fonseca
### Opinion by Justice Fonseca

Appellant Lindsey Bryant appeals a final order granting divorce, arguing that the trial court erred naming appellee Jason Bryant as sole managing conservator (SMC) of their two children. She challenges the trial court's determination on two grounds: 1) the court lacked discretion to name appellee as SMC because he did not plead that he was seeking to be appointed as SMC and the parties did not try the issue by consent, and 2) the trial court abused its discretion in evaluating the evidence and demonstrated bias

against her. Appellant also challenges an order granting appellee conditional appellate attorney's fees in the event of an unsuccessful appeal. We determine that the trial court abused its discretion concerning conservatorship. Therefore, we will affirm in part, reverse in part, and remand for a new trial.

## I.  BACKGROUND

Appellee and appellant married on April 11, 2018. Appellant had one child, S.W., from a prior marriage, and had two children with appellee, B.B. and S.B. According to appellant, the marriage was marked by multiple instances of domestic violence. She alleged at least four incidents where appellee was physically violent towards her, including in December 2019, April 2022, October 2022, and February 2023. She alleged that appellee choked her during both 2022 incidents, and that she was left bruised. Appellee denied that any of these incidents occurred. According to appellee, appellant would allege incidents of violence only when he discussed getting divorced from her.

The divorce was precipitated by a March 1, 2023 incident, of which the parties offered differing accounts. They were getting their children ready for bed on that evening. Appellant alleged that she heard a loud slapping sound when appellee was changing B.B.'s diaper. Appellee contended that B.B. was kicking him and playing with his dirty diaper and that he "popped" B.B.'s bottom as a result. Appellant asserted she came to the room and found B.B. coughing, choking, and with welts on his bottom and blood on his lip. She further contended that appellee started screaming at her and could not answer her when she asked him why B.B. was coughing and had blood on his lip. Appellant then took B.B. to the bathroom, where she claims that he vomited fecal matter and that B.B. told her that appellee had fecal matter on his finger and stuck it in B.B.'s mouth. Appellant

2

then called law enforcement because appellee allegedly was threatening to break down the bathroom door. Appellee was arrested that night but was released on bond. He was instructed not to contact his children and to stay away from appellant's residence.

On April 25, 2023, appellee filed for divorce seeking a conservatorship determination. He was arrested on May 3, 2023, for violating his bond conditions as he was allegedly stalking appellant by driving past her residence. Appellee was in possession of two handguns when he was arrested. Appellant countersued for divorce on May 18, 2023, seeking protective orders and to be appointed as SMC. She alleged that appellee again violated his bond conditions by calling her twice on July 3, 2023. Appellee asserted that these calls were accidental.

The trial court held a hearing on September 13, 2023, regarding appellant's request for protective orders. At this hearing, appellee asserted that appellant invented the domestic violence allegations and March 2023 incident due to his requests for divorce. Both parties testified regarding their versions of the March 2023 incident. Appellant introduced a Victoria Police Department (VPD) report noting that fecal matter had been observed by an officer in the bathtub on the night of the incident. Appellant testified that she first filed for divorce against appellee after he allegedly choked her in December 2019. She sought a protective order after that incident, which was denied.

Appellee testified that appellant recanted this December 2019 allegation after her first husband moved to modify the custody agreement for S.W. The trial court questioned appellant about her recantation, suggesting that her recantation could be seen as perjury. Appellant testified that her perception of the December 2019 incident had changed, that appellee managed to convince her that the choking did not occur, and that she was

3

misperceiving events due to pregnancy hormones. However, she stated that she now believed that appellee had choked her in December 2019. Appellee also testified regarding the May 2023 arrest for stalking, stating that he thought appellant had moved out of their home when he drove by the house.

Holly Hamilton with Child Protective Services (CPS) testified regarding her investigation of alleged abuse by appellee against B.B. She testified that CPS concluded that the allegations of physical abuse were valid, and they developed a safety plan for appellee to avoid contacting the children and follow his bond conditions. Hamilton also recommended family-based safety services for appellee, which he refused to participate in. Stephanie Thayer, B.B.'s trauma therapist since March 2023, testified that B.B. showed signs of trauma and that it was the policy of her group not to involve alleged abusers. The trial court, expressing disbelief that the March 2023 incident had occurred, asked Thayer whether she considered Munchausen syndrome as an explanation for the alleged occurrences.

On September 19, 2023, appellant decided to file police reports about the alleged April and October 2022 strangulation assaults as she had not previously reported those incidents and felt the trial court had been dismissive of her accusations of assault at the September 13, 2023 hearing. She also reported that appellee was impersonating and harassing her on the internet.

The trial court denied appellant's request for a protective order. On October 18, 2023, the trial court entered orders naming both parents as joint managing conservators (JMCs) and requiring them to exchange custody on a regular schedule at a mutually agreeable place or at the parking lot of the Victoria County Sheriff's Office (VCSO).

4

Appellant alleged that appellee threw acid on her vehicle during a custody exchange on December 6, 2023.

Appellant filed her live pleading on November 13, 2023, still seeking to be appointed as SMC. On January 2, 2024, appellee filed his "Second Amended Petition" seeking appointment of both parents as JMCs. He also requested to be designated as the parent with the sole right to designate the primary residence of the children, to enroll them in school, and for appellant to be ordered to pay child support.

A bench trial occurred on January 22 and 23, 2024. At trial, appellee asserted that appellant fabricated the accusations of domestic violence against her and B.B. He introduced evidence showing that the VPD, VCSO, and the District Attorney's (DA) office had declined to pursue further investigation of the various alleged abuse incidents, including the acid incident, and that a grand jury had no-billed charges from the alleged May 2023 stalking incident.

Appellee testified that all his visits with his children had gone well since October 2023. He complained that appellant did not seek to involve him in B.B.'s therapy, though admitted she sent him the contact information for the counseling center. He also alleged that appellant was not helping to potty-train B.B., who was nearly five years old, and that she would send the child back to him in diapers and would not clean his underwear. Appellee opined that appellant's home was unstable, that she was portraying him as a bad person to their children, and that she was trying to exclude him from the children's lives and put him in jail.

Appellant denied wanting to exclude appellee from the children's lives or wanting to put him in jail, but she felt he needed anger management counseling. The trial court

5

questioned her ability to make shared decisions with appellee. Appellant testified regarding the shared decisions she had made with appellee, including planning meetings to exchange custody, adjusting meeting times, discussing medications, appointments, and other meetings for their children, communicating through a court-appointed communication phone app, and working on holiday visitations. The trial court stated during her testimony that her accusations of abuse "have not been confirmed by anyone," apparently basing this statement on the grand-jury no-bill and lack of investigation by various law enforcement agencies. The trial court questioned appellant's ability to encourage a healthy relationship between her children and appellee, stating that she constantly made "unfounded" criminal complaints against appellee.

Appellant then testified regarding the various alleged incidents of abuse and introduced supporting physical evidence. She described that the incidents of abuse would begin with arguments and that appellee would get mad and start being physically violent against her. She admitted an audio recording of the April 2022 incident where appellee can be heard yelling at appellant and a smacking noise is heard. Appellee is also heard stating that if appellant ever does anything to him, she will never have to worry about her kids again.

Appellant also introduced an alleged audio recording of the March 2023 incident. Appellee disputed whether the audio recording was from the March 2023 incident, though did not provide any alternate explanation for the source of the audio recording and the trial court ultimately admitted it. Appellee can be heard yelling about B.B. being covered in poop. B.B. is gagging and coughing on the recording. Appellant asks appellee why B.B. is bleeding and coughing and appellee says he "doesn't know why [B.B.] is bleeding and

6

coughing." She is heard asking B.B. why he is throwing up and B.B. states that poop is in his mouth from "daddy's finger."

Appellant further testified that CPS reviewed the audio and video recording of the March 2023 incident and concluded that appellee committed physical abuse against B.B. She also stated that she was seeking to be appointed as SMC but would allow appellee to visit with the children. Appellant testified that the children would come from appellee's care in soiled diapers, improperly dressed, with flea bites, and sometimes hungry. She also attempted to testify regarding the December 2019 incident, but the trial court refused to hear any testimony about the incident due to her prior recantation.

On the second day of trial, Thayer testified that appellant had requested appellee be involved in therapy, but she could not do so because it is her office's policy not to involve an offending caregiver in therapy. She also testified that she did not think the DA or the grand jury were made aware that B.B. had stated multiple times that the March 2023 incident had occurred. Thayer further testified that B.B.'s therapy should continue. Appellee testified that on December 12, 2023, he attended a meeting at B.B.'s school where B.B. was noted as having no emotional or behavioral issues.

VPD Officer Dinah Levario testified regarding her involvement on the day of the March 2023 incident. She stated that she saw a scratch on B.B.'s face and that his butt was "bright red" from welts. Officer Levario testified that she saw "spit up" in the bathtub that appeared to contain fecal matter. She also testified that she drafted an offense report finding that appellee had caused bodily injury to B.B. by placing fecal matter in his mouth. The trial court questioned whether Officer Levario conducted testing to identify the substance as fecal matter, which she did not.

VPD detective Christina Tate testified that CPS reached out regarding the case and that she specialized in child sexual and physical abuse cases. She testified regarding her review of a video recording from the incident showing welt marks on B.B.'s body, that she heard B.B. state on the audio recording that his dad put poop in his mouth, and her conclusion that an incident of abuse had occurred.

VPD investigator Aaron Johnson testified that he compiled a report for the investigation results and that appellee was found to have violated his bond conditions. He also testified that the DA's office sent a notice declining to press charges. Investigator Johnson stated that appellee had been arrested with two handguns in his possession. The trial court questioned the relevance of appellee's possession of handguns for a stalking offense and commented with a rhetorical question, "Do you want to know how many handguns are in my vehicle, Counsel?" Appellant's counsel replied that the trial court did not have a stalking offense or charge, to which the trial court stated, "Not yet."

The trial court entered its "Final Decree of Divorce" on February 21, 2024, granting the divorce and appointing appellee as SMC and appellant as a possessory conservator. Appellant subsequently filed a request for findings of fact and conclusions of law on March 11, 2024, and a "Motion for New Trial" on March 22, 2024. The trial court entered its findings on April 1, 2024, including that appellant was not a credible witness and that the preponderance of evidence did not establish a history of family violence by appellee. Finding that appellant could not reach shared decisions with appellee and could not encourage a positive relationship between her children and appellee, the trial court concluded that the presumption in favor of both parents being appointed as JMCs had been rebutted. The trial court denied appellant's "Motion for New Trial" on May 20, 2024.

This appeal followed. On June 24, 2024, the trial court entered an order awarding appellate attorney fees to appellee in the event of an unsuccessful appeal by appellant.

## II. SUA SPONTE CONSERVATORSHIP DETERMINATION

In her first issue, appellant contends the trial court erred by sua sponte appointing appellee as SMC without appellee seeking this relief in his pleadings, and that the parties did not try the issue by consent. Oppositely, appellee argues that despite the lack of an explicit pleading seeking his appointment as SMC, it was within the trial court's discretion under the Texas Family Code to act in the children's best interest and make any appropriate conservatorship finding. As appellee concedes, his live pleadings did not seek appointment as SMC. However, we conclude that appellee was not required to plead that he was seeking appointment as SMC for the trial court to appoint him as SMC.

In determining child custody as part of a divorce, the trial court must either appoint an SMC or JMCs. *See* TEX. FAM. CODE ANN. §§ 153.005(a)(1)–(2). The court must consider evidence of physical or sexual abuse against a spouse or child committed within two years prior to filing the suit. *See id.* § 153.004(a). As part of determining whether there is credible evidence of family violence or child abuse, "the court shall consider" whether a Chapter 85 protective order was rendered in the prior two years. *Id.* § 153.004(f). The court is required to appoint a parent as SMC or both parents as JMCs unless: 1) "credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child"; or 2) the court finds that "appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." *Id.* § 153.131(a); *see id.* § 153.004(b).

9

Relatedly, there is a presumption that it is in the child's best interest for both parents to be named JMCs, though a finding of family violence will remove that presumption. *Id.* § 153.131(b).

Generally, "[t]he judgment of the court shall confirm to the pleadings[.]" TEX. R. CIV. P. 301. However, "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002. Therefore, Texas courts have held "where the best interests of the child are the paramount concern, technical pleading rules are of reduced significance." *Messier v. Messier*, 389 S.W.3d 904, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The Texas Supreme Court has held "that a suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child vests that court with decretal powers in all relevant custody, control, possession and visitation matters involving the child." *In re J.C.R.*, No. 13-18-00491-CV, 2020 WL 3396603, at *7 (Tex. App.—Corpus Christi–Edinburg June 18, 2020, no pet.) (mem. op.) (quoting *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967)).

We have further held that trial courts have "broad, equitable powers in determining what will be best for the future welfare of a child" and that it "should be unhampered by narrow technical rulings." *MacCallum v. MacCallum*, 801 S.W.2d 579, 586 (Tex. App.—Corpus Christi–Edinburg 1990, writ denied). We give wide latitude to trial courts to determine the best interest of minor children. *See Scoggins v. Trevino*, 200 S.W.3d 832, 839 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.); *In re J.P.*, No. 13-18-00648-CV, 2020 WL 103858, at *9 (Tex. App.—Corpus Christi–Edinburg Jan. 9, 2020, pet. denied) (mem. op.). Trial courts have discretion "to place conditions on visitation without pleadings

10

requesting such conditions." *MacCallum*, 801 S.W.2d at 586. Still, "[p]leadings must at a minimum notify the opposing party of the claim involved." *Messier*, 389 S.W.3d at 907.

Appellant cites several cases which she claims demonstrate that a trial court cannot appoint an SMC without an affirmative pleading seeking such appointment. The first, *In re E.A.*, is not relevant authority as it involved improper service of an amended petition and did not involve whether an SMC could be appointed without an affirmative pleading. 287 S.W.3d 1, 5–6 (Tex. 2009). However, the second, *Baltzer v. Medina*, did hold in a modification proceeding that it was error to appoint an SMC when the party appointed did not request the appointment in their pleadings and instead testified that conservatorship should be shared. 240 S.W.3d 469, 476 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The First Court of Appeals has also held it is error in the modification context to appoint a party as SMC if not plead. *See Binder v. Joe*, 193 S.W.3d 29, 33 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The Second Court of Appeals has held that even where one party seeks to be appointed as SMC and testifies that appointing both parents as JMC is improper, if the party appointed as SMC did not seek it and testified that conservatorship should be shared, that the trial court cannot modify custody and appoint that party as SMC. *See In re A.B.H.*, 266 S.W.3d 596, 600-01 (Tex. App.— Fort Worth 2008, no pet.).

Of note, all of appellant's cited authority arises in the modification context. We have previously held that pleading requirements apply more strictly in modification cases than in original custody proceedings. *See In re J.J.G.*, No. 13-22-00002-CV, 2023 WL 2422493, at *5 (Tex. App.—Corpus Christi–Edinburg Mar. 9, 2023, no pet.) (mem. op.) (citing *Marriage of Christensen*, 570 S.W.3d 933, 940 n.9 (Tex. App.—Texarkana 2019,

11

no pet.)). While the facts of the present matter are comparable to the facts of appellant's cited authorities, the present matter differs in a key respect as it is not a modification proceeding.

Accordingly, assuming the trial court correctly determined there was no § 153.004 family violence finding as to either parent, it had wide discretion to determine what is in the best interest of the children regardless of what was pled. *See Scoggins*, 200 S.W.3d at 839. The trial court was statutorily required to either appoint both appellant and appellee as JMCs or one of them as SMC. *See* TEX. FAM. CODE ANN. §§ 153.005(a)(1)–(2). Appellant's authority is apposite as a trial court is *not* required to make a conservatorship determination in a modification case absent explicit pleadings from the parties requesting such relief. *See id.* § 156.101(a). Since there is a request for a conservatorship determination in this matter and there is a required statutory finding by the trial court to appoint either an SMC or JMCs, the trial court here was necessarily imbued with discretion to appoint either party as SMC if in the children's best interest, regardless of the pleadings. *See Leithold*, 413 S.W.2d at 701; *MacCallum*, 801 S.W.2d at 586; *In re J.J.G.*, 2023 WL 2422493, at *5.

To hold otherwise would mean that the trial court could not appoint an SMC even if the evidence indicates it would be in the best interest of the children, contradicting the intent of the statute. *See* TEX. FAM. CODE ANN. § 153.002. Appellant argues this would mean a party never has to plead to be appointed as an SMC and that a party would not receive fair notice under the law. But as we have explained, notice requirements are secondary to the best interest inquiry in child custody cases, and the trial court's ability to do what is best for the welfare of the child should not be hampered by narrow technical

12

rulings. *See In re J.P.*, 2020 WL 103858 at *9 (citing *MacCallum*, 801 S.W.2d at 586–87). In a divorce proceeding or original custody determination, notice requirements are satisfied if the parties have notice that conservatorship is a matter in dispute, which indeed is inherent in any type of suit involving an original custody determination. Therefore, because appellee pled that he was seeking some form of conservatorship determination, appellant had sufficient notice that conservatorship was in dispute.

Appellant cites *In re J.A.A.* for the proposition that notice of potential relief is still required even in light of the liberal pleading requirements. No. 13-07-413-CV, 2008 WL 384250, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 14, 2008, no pet.) (mem. op.). However, *In re J.A.A.* was a default judgment matter where the pleading party was not seeking any type of conservatorship and there was no custody or divorce proceeding instituted. Thus, this case is inapposite to the present facts.

Appellant further argues this interpretation of the law is incorrect because we have previously examined whether parties tried a similar issue by consent—an analysis which would have been unnecessary if no specific pleading was required. *See In re Marriage of Karsagi*, No. 13-20-00077-CV, 2022 WL 868129, at *5–6 (Tex. App.—Corpus Christi–Edinburg Mar. 24, 2022, pet. denied) (mem. op.). But *Karsagi* involved the issue of whether conservatorship was properly submitted to a jury for determination, as permitted by the Texas Family Code. *See id.*; TEX. FAM. CODE ANN. § 105.002. In such cases, the law is clear that the trial court cannot override the jury's determinations on conservatorship. *See Marriage of Karsagi*, 2022 WL 868129, at *6. Accordingly, examination of trial by consent may be necessary in jury trial cases to determine whether parties have submitted the issue of appointment of SMC *to a jury*. Had the parties not

submitted the issue of conservatorship to a jury in *Karsagi*, it would have still been within the trial court's discretion to appoint an SMC despite the father not seeking such appointment.

As we have determined that the trial court was within its discretion to *sua sponte* appoint appellee as SMC, we do not reach the remaining sub-issues of trial by consent, waiver, invited error, and judicial admission. *See* TEX. R. APP. P. 47.1.

### III.    ABUSE OF DISCRETION

In her next issue, appellant contends the trial court abused its discretion by appointing appellee as SMC because it acted arbitrarily and unreasonably in reviewing the facts, gave improper weight to legally inconsequential facts, demonstrated prejudice in its weighing of the evidence due to certain comments made during trial, and that there was insufficient evidence to rebut the presumption she be appointed as JMC.

### A.    Standard of Review

We review trial court decisions "regarding child custody, control, possession, and visitation for an abuse of discretion." *In re K.L.C.*, 672 S.W.3d 734, 743 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.) (quoting *In re H.N.T.*, 367 S.W.3d 901, 903 (Tex. App.—Dallas 2012, no pet.)). An abuse of discretion occurs only when the trial court "acts arbitrarily, unreasonably, or without reference to any guiding rules or principles." *Id.* (quoting *In re H.D.C.*, 474 S.W.3d 758, 763 (Tex. App.—Houston [14th Dist.] 2014, no pet.)). This means there is no abuse of discretion "[i]f there is some evidence of a substantive and probative character that supports the trial court's order[.]" *Id.* There is also no abuse of discretion if the decision is based on conflicting evidence. *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.) (citing *Butnaru v. Ford Motor*

14

*Co.*, 84 S.W.3d 198, 211 (Tex. 2002)).

The legal and factual sufficiency of evidence are relevant factors in determining whether an abuse of discretion occurred, though are not independent grounds of error in a family law case. *In re K.L.C.*, 672 S.W.3d at 743. To determine if an abuse of discretion occurred due to insufficient evidence, we must examine whether there was sufficient evidence for the trial court to exercise its discretion and whether the trial court erred in exercising that discretion. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). Sufficiency of the evidence is part of the first inquiry in evaluating whether there is enough evidence for the trial court to exercise discretion. *In re B.G.J.*, 702 S.W.3d 886, 898 (Tex. App.—Eastland 2024, no pet.). Conservatorship determinations are "intensely fact driven[.]" *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). Therefore, in reviewing the evidence, this Court must defer to the trial court's review of the evidence and determinations on witness credibility as the trial court is best positioned to evaluate having personally seen the witnesses and assessed their credibility. *See In re N.P.M.*, 509 S.W.3d 560, 564–65 (Tex. App.—El Paso 2016, no pet.).

Evidence supporting the trial court's finding is legally insufficient "if the record shows: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact." *In re K.L.C.*, 672 S.W.3d at 743–44 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)). Evidence supporting the trial court's finding is factually insufficient if it is "'so against the great weight and preponderance of the evidence as to be manifestly wrong.'" *In re E.S.S.*, 658 S.W.3d 613,

15

616 (Tex. App.—El Paso 2022, no pet.) (quoting *Wheeling v. Wheeling*, 546 S.W.3d 216, 223 (Tex. App.—El Paso 2017, no pet.)).

The Texas Family Code mandates "a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." Tex. Fam. Code Ann. § 153.131(b). This presumption is removed if there is a finding of a history of family violence for the parents. *Id*. This presumption may also be rebutted in consideration of the following factors:

> (1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;

> (2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;

> (3) whether each parent can encourage and accept a positive relationship between the child and the other parent;

> (4) whether both parents participated in child rearing before the filing of the suit;

> (5) the geographical proximity of the parents' residences;

> (6) if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and

> (7) any other relevant factor.

*Id*. §§ 153.134(a)(1)–(7). "The trial court must make specific factual findings to support its conclusion that the presumption has been rebutted; failing to do so constitutes error." *In re R.W.N.R.*, 697 S.W.3d 223, 236 (Tex. App.—El Paso 2023, no pet.).

**B.    Applicable Law**

Appellant accuses the trial court of demonstrating bias in its conduct throughout the trial. Additionally, appellant argues that her prior recantation of a family violence

16

incident and the grand jury no-bill were given improper weight.

## 1. Judicial Bias

Generally, it is disfavored for trial judges to call and question witnesses. *Johnson v. Hawkins*, 255 S.W.3d 394, 398 (Tex. App.—Dallas 2008, pet. denied); *see also Galvan v. State*, 988 S.W.2d 291, 297 (Tex. App.—Texarkana 1999, pet. ref'd) ("Texas is 'second to none' in its disapproval of judges' examination of witnesses during a jury trial . . . ."). But, though not favored, extensive and adversarial questioning by a trial judge is permissible in a bench trial if the questions are relevant to the issues before the court and the judge's impartiality is not affected. *See In re R.P.*, 37 S.W.3d 76, 79 (Tex. App.—San Antonio 2000, no pet.); *Trahan v. Trahan*, 732 S.W.2d 113, 114-15 (Tex. App.—Beaumont 1987, no writ); *see also Gale v. State*, No. 05-17-00592-CR, No. 05-17-00595-CR, No. 05-17-00596-CR, 2018 WL 3434511, at *5 (Tex. App.—Dallas July 17, 2018, pet. ref'd) (mem. op., not designated for publication).

We have previously held in a criminal sentencing case that a defendant may complain of a trial court's partiality for the first time on appeal if the conduct is so egregious as to deem the judge biased. *Hernandez v. State*, 268 S.W.3d 176, 184 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). This decision arose out of the reasoning in *Blue v. State* that a right to an impartial judge is an absolute requirement and that due process allows complaint for the first time on appeal where a trial court's comments are "so egregious" as to deem the judge biased. 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality op.). While we have not applied this reasoning in a civil case previously, the Third Court of Appeals has suggested that this reasoning would apply in a civil case where the bias demonstrated is "of such nature and extent as to deny due process of law." *Off.*

*of Pub. Util. Couns. v. Pub. Util. Com'n*, 185 S.W.3d 555, 574 (Tex. App.—Austin 2006, pet. denied) (citing *Rosas v. State*, 76 S.W.3d 771, 774 (Tex. App.—Houston [1st Dist.] 2002, no pet.)). Bias is considered impermissible when it comes "from an extrajudicial source and result[s] in an opinion on the merits of the case other than what the judge learned from participating in the case." *Id.* (citing *Rosas*, 76 S.W.3d at 774).

### 2. Recantation of Family Violence

We have previously recognized that recantation of prior accusations of family violence is "not an uncommon phenomenon" in such cases. *Salazar v. State*, No. 13-15-00583-CR, 2016 WL 6124640, at *3 (Tex. App.—Corpus Christi–Edinburg Oct. 20, 2016, no pet.) (mem. op., not designated for publication). Further, Texas recognizes that prior false accusations are generally not admissible in a criminal case when used to attack the general propensity for truthfulness of a particular witness. *Hammer v. State*, 296 S.W.3d 555, 565 (Tex. Crim. App. 2009).

### 3. Grand Jury "No-Bill"

"A Grand Jury's no-bill is merely a finding that the specific evidence brought before the particular Grand Jury did not convince them to formally charge the accused with the offense alleged." *Garza v. Harrison*, 574 S.W.3d 389, 396 n. 9 (Tex. 2019) (quoting *Rachal v. State*, 917 S.W.2d 799, 807 (Tex. Crim. App. 1996)). The fact of a no-bill does not mean that an incident did not occur or cannot qualify as an act of family violence pursuant to the Family Code as the Family Code does not require indictment or criminal conviction for a trial court to find an act constitutes family violence. *In re R.S.*, No. 01-18-00058-CV, 2020 WL 3393069, at *8 (Tex. App.—Houston [1st Dist.] June 18, 2020, no pet.) (mem. op.).

**C.    Analysis**

To determine if the trial court abused its discretion, we must first review what evidence it relied on in reaching its decision. The trial court issued the following relevant findings of fact and conclusions of law:

12. The Court finds that [appellant] does not have the ability to give first priority to the welfare of each child and reach shared decisions with [appellee] in the child's best interests.

13. The Court finds that [appellant] cannot encourage and accept a positive relationship between each child and [appellee].

14. The Court finds that [appellant] has made allegations that [appellee] has committed acts of family violence against [appellant].

15. The Court finds that [appellant] has recanted or denied allegations of family violence alleged to have occurred prior to October, 2020.

16. The Court finds that criminal charges arising from [appellant's] allegation of events occurring on March 1, 2023 have been "no billed" by the Victoria County Grand Jury.

17. The Court finds that the [DA]'s office has declined to prosecute the allegations of stalking alleged by [appellant] to have occurred May 3, 2023.

18. The Court finds that [appellant] made claims of bad acts by [appellee] following the Temporary Orders hearing in this case. The Court finds that those claims were unsubstantiated. No action was taken by [VPD].

19. The Court finds that, following rendition of temporary orders governing possession of an access to the parties' children, [appellant] made a claim of damage to her vehicle during an exchange of possession. [Appellant] first made the complaint to [VCSO] on December 6, 2023 and reported the same alleged incident to [VPD] on December 7, 2023. The complaint was not substantiated by either law enforcement agency and no action was taken.

20. The Court finds that [appellant] is not a credible witness.

21. The Court finds that the preponderance of the credible evidence did not establish a history or pattern of past or present child neglect, or physical or sexual abuse by [appellee] against [appellant] or a child of the marriage.

22. The Court finds that the preponderance of the credible evidence did not establish a history or pattern of [appellee] committing family violence during the period beginning April 25, 2023 and ending on the date the divorce was

19

granted.

23. The Court finds that [appellant] filed an Application for Protective Order on May 18, 2023 and an Amended Application for Protective Order on August 29, 2023. After an evidentiary hearing on September 13, 2023, [appellant]'s Application for Protective Order was Denied by the Court.

. . . .

33. The Court finds that the periods of possession and access to each child which were granted to [appellee] and [appellant] are in the best interests of each child.

(internal references omitted).

To overcome the rebuttable presumption that both parents be appointed as JMCs and to appoint appellee as SMC, the trial court had to either find that appellant committed an act of family violence or that it was not in the best interest of the children based on seven factors in the Family Code. *See* TEX. FAM. CODE ANN. §§ 153.131(b), .134(a)(1)–(7). There is no allegation in the record and no findings by the trial court that appellant committed an act of family violence, so the presumption was not overcome in this regard.

The trial court's findings of fact and conclusions of law relied on factors two and three in finding that the presumption was rebutted. Namely, that appellant lacked the ability to give first priority to the welfare of the children and reach shared decisions with appellee in the children's best interest and that appellant cannot encourage and accept a positive relationship between her children and appellee. *See id.* §§ 153.134(a)(2)–(3). The trial court also found appellant was not a credible witness and that her accusations of appellee's abusive behavior lacked credible evidence.

Appellant contends that these findings were only supported by the trial court's improper reliance on the legally inconsequential facts that she had recanted a prior accusation of family violence against appellee in a prior proceeding, that a grand jury had

no billed the alleged March 1, 2023 incident, that the DA had declined to prosecute the alleged May 2023 stalking incident, and that law enforcement had declined to pursue other charges. In contrast, appellee contends these are assumptions on appellant's part and that the findings of fact do not explicitly equate the determination that appellant could not give first priority to the welfare of the children and encourage and accept a positive relationship between her children and appellee with the credibility determinations.

However, the trial court's findings of fact explicitly reference the recantation, the grand jury no-bill, and lack of pursuit of criminal charges as the basis for its conservatorship determination. Our review of the record indicates that the trial court made comments during the protective order hearing and throughout trial suggesting that appellant's prior recantation was potentially akin to perjury and asked multiple witnesses questions related to the credibility of the abuse accusations. The trial court asked additional questions suggestive of the trial court's belief that appellant was intentionally reminding her children of the alleged March 2023 incident prior to court appearances and was attempting to turn her children against appellee.

Indeed, there is no other evidence in the record regarding appellant's inability to encourage a positive relationship between her children and appellee apart from the family violence accusations. Likewise, there is no other evidence in the record supporting a finding that appellant could not give first priority to the welfare of the children and reach shared decisions with appellee. While appellee correctly states there is no indication in the record about the precise weight the trial court afforded to each particular piece of evidence, appellee does not point to any other factual evidence supportive of the findings of fact. Therefore, we find it apparent that the trial court's determinations on Family Code

§ 153.134(a) factors two and three, and determinations regarding appellant's credibility and the credibility of the family violence accusations were based on the recantation, lack of prosecution, and grand jury no-bill.

Accordingly, we now determine whether this evidence is sufficient for the trial court to exercise its discretion and whether it erred in exercising its discretion. *See Moroch*, 174 S.W.3d at 857. Appellant argues that the evidence is "legally inconsequential" and thus that the trial court was barred from considering such evidence in making its conservatorship determination. However, none of appellant's authority supports such a contention.

As to appellant's prior recantation of a family violence incident, the case referenced by appellant only goes to the admissibility of prior false accusations in criminal cases. *See Hammer*, 296 S.W.3d at 565. Even assuming that this is applicable in a family law case, appellant does not challenge the admissibility of the recantation and did not object to entry of such evidence at trial. *See* TEX. R. APP. P. 33.1(a) (regarding preservation of error). While she also cites our prior recognition that family violence cases often involve recantation of credible incidents of abuse, this alone does not render it legally improper for the trial court to consider such evidence. *See Salazar*, 2016 WL 6124640, at *3. Appellant cites no authority establishing that the trial court was barred from giving weight to evidence of a prior recantation of family violence and we have found none.

Likewise, appellant's caselaw regarding a grand jury's no-bill does not address whether the trial court is barred from giving weight to evidence of the no-bill. *See Rachal*, 917 S.W.2d at 807. Appellant correctly points out that a grand jury no-bill does not necessarily mean that the alleged incident cannot be considered an act of family violence

22

or that it did not occur. However, this does not mean the trial court is barred from making that determination as the trier of fact. *Rachal* only stands for the proposition that the factfinder may still determine that an incident was credible despite the no-bill, not that the factfinder *must* consider the incident credible. *See id.*; *In re R.S.*, 2020 WL 3393069, at *8. Appellant provides no authority that the failure of law enforcement or a particular DA's office to pursue or press charges cannot be considered by the trial court in evaluating the credibility of testimony. Accordingly, appellant does not have a valid challenge to legal insufficiency.

We next review factual insufficiency considering the entire record. The record is indicative of troubling comments by the trial court. Generally, Texas is opposed to trial judges questioning witnesses due to the appearance of abandonment of its role as a neutral and unbiased factfinder. *Johnson*, 255 S.W.3d at 398. Because this was a bench trial, the trial court had great leeway to engage in extensive and even adversarial questioning of the witnesses so long as it was related to the fact issues at trial and the judge's impartiality was not affected. *In re R.P.*, 37 S.W.3d at 79. The trial court questioned every witness at trial in some regard, with most questions centered around investigation of the abuse incidents and appellant's propensity for truthfulness in light of the prior recantation. These inquiries were of questionable relation to the facts at issue, focusing more on appellant's conduct in a prior case rather than on who was the caregiver that could act in the best interest of the children.

Notably, there was an exchange wherein the trial court questioned Investigator Johnson, who testified regarding appellee's alleged violation of his bond conditions in May 2023 when he was arrested for stalking appellant. He further testified that appellee

23

was in possession of two handguns when he was arrested for stalking. The trial court then questioned the relevance of appellee possessing handguns, to which appellant's counsel replied that it was a relevant fact considering the potential danger of the handguns and nature of appellee's alleged offense. The trial court took umbrage at this assertion asking, "Do you want to know how many handguns are in my vehicle, Counsel?" After appellant's counsel asserted that the trial court judge does not have a stalking offense or charge, the trial court replied, "Not yet."

While a judge's remarks will "only in the rarest circumstances evidence the degree of favoritism or antagonism required" to demonstrate judicial bias, these comments reach that level considering the surrounding record. *See Gaal v. State*, 332 S.W.3d 448, 454 (Tex. Crim. App. 2011). These are more than the mere "expressions of impatience, dissatisfaction, annoyance, and even anger" that do not rise to the level of partiality. *Id.* Instead, the trial court judge actively asserted himself into the proceedings by asking a rhetorical question about the number of firearms in his vehicle during a case with alleged family violence. The trial court then remarked that he was "[n]ot yet" charged with stalking, making an implicit threat about his potential for stalking and further indicating a clear bias against the veracity of appellant's stalking accusation against appellee.

Such comments came at the end of trial after the trial court judge actively inserted himself into the case through the adversarial questioning of each witness and comments made throughout trial. He went so far as to remark to appellant that none of her allegations had been confirmed and that she "constantly [made] criminal complaints that appeared to be unfounded[.]" The trial court repeatedly mentioned the lack of prosecution by the DA's office, the grand jury's no-bill, and lack of investigation by the VPD and VCSO. The

trial court engaged with the appellant in an adversarial back-and-forth discussion regarding the substance of her complaints that would have been more proper of cross-examination:

THE COURT: Did anybody make a finding?

[Appellant]: Yes. Yes.

THE COURT: No. Has any authority made a finding?

[Appellant]: Yes.

THE COURT: That is binding that those events occurred?

[Appellant]: It is in the DA's office.

THE COURT: Who?

[Appellant]: Those assaults are in the DA's office pending.

THE COURT: They haven't made – they haven't prosecuted them.

[Appellant]: No. It's still pending. Last I heard it was still pending. They have not presented it. Jordan Fries, his Investigator Roman, they still have the cases pending in the DA's office.

THE COURT: Okay. So they have not been presented to the grand jury?

[Appellant]: No. They have not—I have not been given a status update and they have not been presented to the grand jury?

THE COURT: Okay. I'm sorry. You may continue.

The trial court also asked questions of B.B.'s therapist implying that the March 2023 incident was fabricated and that B.B. would only mention the incident just prior to court appearances. This was also after the September 2023 temporary order hearing where the trial court questioned appellant about her recantation being potentially considered perjury, and questioned the therapist about Munchausen syndrome, implying that

appellant was manufacturing incidents of abuse for attention.

The trial court also engaged in a back-and-forth discussion with B.B.'s therapist, challenging her classification of appellee as a "perpetrator" despite no charges having been filed by law enforcement:

THE COURT: Okay. So you don't attempt to determine the position of the alleged perpetrator I think you used the term?

[Thayer]: No sir. We get that information from the [CPS] or law enforcement.

. . .

THE COURT: Well, your partners, specifically the district attorney in Victoria County, told you that all charges had been dropped.

[Thayer]: Yes.

THE COURT: Did you then reach out to a person who was formerly alleged to be a perpetrator and now is not alleged to be a perpetrator?

[Thayer]: No, because he was still listed as alleged perpetrator according to [CPS].

THE COURT: Well, but [CPS] is not in the case anymore.

[Thayer]: Yes. However, anyone that is involved in our services and allowed on our property has to be able to pass a [CPS] background check.

THE COURT: Well, but again, they're no longer in the picture and they're not involved and apparently there was an— inferentially at least there was a determination that [CPS] was wrong.

[Thayer]: I haven't heard anything about that.

THE COURT: Well, I mean, isn't that intuitive? I mean, this case has been investigated by law enforcement.

[Thayer]: Uh-huh.

THE COURT: His status as a perpetrator has been investigated by

26

law enforcement; correct?

[Thayer]:            Yes.

THE COURT:       And has been presented to the [DA]; correct?

[Thayer]:            Yes, sir.

THE COURT:       And has been presented to a grand jury; correct?

[Thayer]:            Yes, sir.

THE COURT:       And the result of all of that is no criminal charges filed at all.

[Thayer]:            Yes, sir.

THE COURT:       Or rejected by the grand jury. No billed by the grand jury.

[Thayer]:            Yes, sir.

THE COURT:       So it appears that there is at least a possibility that somebody was wrong; correct?

[Thayer]:            That is correct.

This level of antagonism, especially considering the nature of the case and the trial court's suggestion that "[CPS] was wrong," is in excess of any provocation or comment from the parties, the witnesses, or their counsel, and is indicative of the court's bias against appellant. *See id.* at 455 (citing *In re United States*, 614 F.3d 661, 665-66 (7th Cir. 2010)).

While the trial court's adversarial questioning of witnesses alone does not rise to the level of bias, when considered in combination with the trial court's hostile comments about his own gun possession, and potential stalking charges, which are facts entirely irrelevant to the case, and repeated indications that accusations not leading to criminal charges are "unfounded," the record indicates that the trial court judge was not acting as an impartial factfinder attempting to arrive at the truth. Instead, the trial court was actively seeking to discredit appellant and made light of serious accusations of family violence.

*See* TEX. CODE JUD. CONDUCT Canon 2(A) (stating that a judge "should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary"); *see also Ramos v. State*, 2023 WL 885008, at *14 (Tex. App.—Corpus Christi–Edinburg Dec. 21, 2023, no pet.) (citing *Lagrone v. State*, 209 S.W. 411, 415 (Tex. Crim. App. 1919) ("The law contemplates that the trial judge shall maintain an attitude of impartiality throughout the trial.")).

Appellee argues that appellant's claims of judicial bias are akin to seeking recusal of the trial court judge and, as appellant failed to move at trial to recuse the judge and failed to object to the trial court's comments, that such error was waived. However, we have previously held in a criminal context that a party can raise the issue of a lack of judicial impartiality on appeal for the first time when the conduct is so egregious as to deem the judge biased. *See Hernandez*, 268 S.W.3d at 184. Though this is not a criminal matter, we are persuaded by the Third Court of Appeals' reasoning in *Off. of Pub. Util. Couns.* that similar reasoning should apply in a civil case where the judicial conduct and bias is so egregious as to violate due process. 185 S.W.3d at 574. Bias rises to this level when coming from an extrajudicial source, as it did in this matter. *See id.* The trial judge's predeterminations about the outcome of the CPS investigation, comments about his personal gun ownership, and statements on not yet being charged with a stalking offense all arise from an extrajudicial source, and not the facts adduced at trial. Therefore, following *Off. of Pub. Util. Couns.*, we apply our reasoning from *Hernandez* in this matter and find that the trial court's conduct here was egregious enough to be considered biased, thereby depriving appellant of a fair trial, allowing this to be raised for the first time on appeal. *See id.*; *Hernandez*, 268 S.W.3d at 184.

28

Further, appellant argues that the trial court's conduct is not a matter of recusal but goes to the abuse of discretion review and sufficiency issues. Based on our review of the record, we agree. While we cannot substitute our own judgment for that of the trial court's and must defer to the trial court's witness credibility determinations and weight given to any particular piece of evidence, the overwhelming weight of the evidence does not support a finding that appellant cannot "give first priority to the welfare of the children" and reach shared decisions with appellee, or that appellant cannot encourage a positive relationship between appellee and their children. *See In re N.P.M.*, 509 S.W.3d at 564–65; TEX. FAM. CODE ANN. § 153.134(a)(2)–(3).

The trial court asked questions of appellant at trial implying that appellant could not make shared decisions with appellee due to her constant unfounded criminal complaints against him. Regardless of the veracity of the accusations, the only evidence adduced at trial was that appellant and appellee continued to cooperate in making shared decisions for their children despite any criminal complaints against appellee. Both appellant and appellee testified regarding their successful exchange of the children at the parking lot of the VCSO. While there was testimony regarding an alleged incident where appellee splashed acid on appellant's vehicle, there was no testimony that this accusation affected the ability of them to work together in the children's best interest. Both testified that they had successfully worked on alternate pickup of their children that was a modification from the court's temporary order. They further testified regarding their working together to place their children in private school.

There was testimony that appellee was unable to participate in B.B.'s therapy. But the evidence indicated that appellee's inability to participate was not due to any action of

appellant but rather the therapist's policy that alleged perpetuators were not allowed to participate. The evidence in the record demonstrates that appellant actively asked to have appellee involved in the therapy. Appellant further testified multiple times that she wanted her children to have a relationship with appellee despite the alleged physical abuse towards her and their children. While appellee testified generally regarding his opinion that appellant was trying to turn their children against them, there was no evidence at trial indicative of that fact to create conflicting evidence. *See In re M.M.M.*, 307 S.W.3d at 849. There is no evidence in the record and no testimony indicating that they ever had a conflict regarding the children's best interest that was not resolved. Therefore, appellee's statements are conclusory and do not create conflicting evidence.

There was also a plethora of evidence that appellee committed family violence. Physical evidence entered at trial included multiple photos showing bruises on appellant's throat, arms, and torso, reports from CPS and the VPD regarding various incidents, and an evaluation of B.B. by CPS finding that appellee physically abused B.B. There was a recording from the date of the March 2023 incident where B.B. can be heard stating that his dad put fecal matter into his mouth. There were other recordings where appellee can be heard shouting at appellant using violent language.

There was also supportive trial testimony. Officer Levario testified that she saw what looked like fecal matter mixed in with B.B's spit-up in a bathtub on the night of the March 2023 incident. Officer Levario further testified that she saw bright red marks on B.B.'s butt and a scratch on his face. There was testimony that the appellee refused to follow the recommendation of CPS to take family-based safety service classes. Thayer testified that B.B. demonstrated signs of trauma and that B.B. talked about the March

30

2023 incident multiple times. Thayer further testified that the only times B.B. discussed appellee in counseling was in reference to the March 2023 incident.

The trial court had discretion to disbelieve all the above evidence, discredit the testimony of appellant and find that appellee had not committed acts of family violence. And again, we cannot substitute our judgment and enter a finding that appellee did commit such acts. But considering the trial court's biased comments about his own irrelevant gun ownership, the evidence that appellant committed acts of family violence, and the lack of evidence regarding the parties' inability to make shared decisions or put the best interests of their children first, we find the evidence supporting the trial court's finding that the presumption in favor of both parents being appointed as JMCs was rebutted is factually insufficient. Based on the record, the appointment of appellee as SMC was against the great weight and preponderance of the evidence. We sustain appellant's second issue.

**D.    Remand vs. Render**

The parties have expressed disagreement about the appropriate remedy in the event this Court sustained one of appellant's issues. Appellee notably asserts that if this matter were remanded, the trial court would only be able to appoint both parties as JMCs as appellant did not challenge the court's determination that appellee be given the right to designate the residence of the children. Appellee accordingly requests this Court to render judgment appointing both parties as JMCs. However, appellee misunderstands the scope of a new trial.

This Court has determined that the evidence supporting the trial court's determination was factually insufficient and that the trial court judge was biased. Therefore, the appropriate remedy is remand for new trial. Appellant challenged

31

appointment of appellee as SMC on appeal, which inherently includes the right to determine the residence of the children. *See* TEX. FAM. CODE ANN. § 153.132(1). The new factfinder will have to evaluate the evidence introduced at the new trial to determine whether appellee be appointed as SMC, appellant be appointed as SMC, or both parties be appointed as JMCs. The new trial will not be solely bound by the evidence introduced at the first trial as appellee incorrectly assumes. Similarly, the new factfinder will have the opportunity to evaluate the witnesses and physical evidence to make their own determinations about the credibility and weight of the evidence.

## IV. CONCLUSION

We affirm the trial court's judgment insofar as it grants a divorce between the parties and disposes of the community assets. As we have sustained appellant's second issue, we reverse the remainder of the trial court's judgment and remand this matter for a new trial concerning the issue of conservatorship.[1] Because the trial court judge that presided over the original trial has retired, we find no need to order the regional presiding judge to appoint a new judge for this matter.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
15th day of May, 2025.

---

[1] As we have ordered this matter to be remanded for a new trial, appellant's issue concerning the award of appellate fees is moot and we do not address it. *See* TEX. R. APP. P. 47.1.

32